## WHITE v. FITZPATRICK, Collector of Internal Revenue.

No. 66, Docket 22068.

United States Court of Appeals, Second Circuit.

Argued Nov. 13, 1951.

Decided Dec. 10, 1951.

Chase, Circuit Judge, dissented.

Robert A. Schulman, Washington, D. C. (John A. Danaher, Shepherd, Murtha & Merritt, Hartford, Conn. and Wenchel, Tannenbaum & Nunan, Washington, D. C., on the brief), for plaintiff-appellant.

Leland T. Atherton, Sp. Asst. to Atty. Gen. (Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, Sp. Asst. to Atty. Gen., Adrian W. Maher, U. S. Atty., of New Haven, Conn., and Edward J. Lonergan, Asst. U. S. Atty., of Hartford, Conn., on the brief), for defendant-appellee.

Before AUGUSTUS N. HAND, CHASE, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

Involved in this appeal is the recurring problem of tax savings claimed as a consequence of a transfer of property from husband to wife with resulting lease or license back. Here neither the Commissioner of Internal Revenue nor the district court has accepted the taxpayer's view of the transactions; and he now appeals from the judgment against him in his action for a refund of the deficiency assessed against him by the Commissioner upon his income and victory taxes for the years 1941, 1943, and 1944.

The following are the facts of the case as stipulated by the parties and found by the trial court. During the years in question and for some time prior thereto, plaintiff engaged in the manufacture of chokes for use on the barrels of shotguns, as sole proprietor of the Poly Choke Company, an unincorporated business. Beginning in 1939 the company occupied certain properties—land, three factories, a garage, and an office—under a lease coupled with a nontransferable option to purchase for $15,370. Plaintiff had developed the basic invention for this device himself and obtained a United States patent for it on December 27, 1932.

On January 21, 1941, he entered into a written agreement with his wife, transferring "the entire right, title and interest in and to" the patent, "to the full end of the term of said patent," for a stated consideration of $10. The following day his wife licensed the exclusive manufacturing right back to him "to the full end of the entire term of said patent." The assignment back was subject to cancellation only if (a) payments fell into sixty days' arrears, or (b) receivership, bankruptcy, forced assignment, or other financial difficulty made it impossible for her husband to carry on his manufacturing concern. It provided for royalties of $1 on each product marketed. Plaintiff filed a gift tax return for the year declaring the fair market value of the patent to be $10,000 and for the next four years, 1941–1944 inclusive, paid his wife some $60,000 as royalties.

At about the same time, December 27, 1940, plaintiff's wife also purchased the property on which the company was located for $16,800 and immediately leased it to her husband orally. On the next day plaintiff made a gift to his wife of $16,175 to cover the purchase price and filed a gift tax return for that amount. Rental payments for the years 1941–1944 inclusive were $1,500 a year, which was the amount that plaintiff had been paying to the original lessor; in 1944, plaintiff in addition paid his wife some $5,000 as "an adjustment in rent."

During the years in question plaintiff deducted both rental payments and royalties as business expenses. After investigation and audit, the Commissioner of Internal Revenue issued a deficiency notice disallowing the deductions in 1948. Plaintiff paid the total deficiency of about $47,000 thus

assessed and brought this action for refund. The district court found (1) that the plaintiff's motivation was to make good certain losses in the value of securities held by his wife and to minimize income taxes for the family group, but (2) that "it was the taxpayer's expectation that no action would be taken by the wife in exercise of her rights of ownership of the patent or real property which would be detrimental to the plaintiff's interests." The court then concluded that by the gifts and license and lease back "by reason of the family relationship the husband retains effective control of the patent and real property, while valid transfers for other purposes, will not form a valid basis for deduction of royalties and rent paid by the husband to the wife as business expenses in arriving at the taxpayer's net income for income tax purposes."

The bare assignment of the patent was legally adequate to transfer all rights adhering thereto to the wife. Likewise the land was purchased in the name of the wife alone. From this plaintiff contends on appeal that the wife's legal title and power were absolute and subject to no conditions or future claims whatsoever. Moreover, there is no evidence, nor does defendant contend, that the plaintiff derived any direct benefit in the form of income from these transactions. Therefore, plaintiff argues that, since the royalties and rents were both ordinary in nature for his type of business and reasonable in amount, they constitute valid business expenses under I.R.C. § 23(a) (1) (A), 26 U.S.C.A. § 23(a) (1) (A), which authorizes the deduction from gross income of "ordinary and necessary expenses" paid "in carrying on any trade or business." See Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212; Deputy v. DuPont, 308 U.S. 488, 60 S.Ct. 363, 84 L. Ed. 416.

■ Underlying reality, however, contradicts this appearance of a complete assignment. "Title" to the patent and land may legally reside in the plaintiff's wife; practically and actually, as the district court concluded, control rests with the husband as effectively as if he had never made the gift of the patent to his wife or given her the money with which to buy the property. Assignment and gift cannot be divorced for tax purposes from their accompanying agreements whereby the husband retained dominion. And in fact plaintiff never intended that it should be; he admitted the impossibility of conducting the business without this basic patent or of finding a comparable factory site in Connecticut. His wife was neither equipped nor evinced any desire to exercise or transfer any rights to the use of either of the properties; in the case of the patent at least, it is clear that she had no legal right to do so, save in the unlikely event of the husband's default. The sole practical effect of these transactions, therefore, was to create a right to income in the wife, while leaving untouched in all practical reality the husband-donor's effective dominion and control over the properties in question. It is not without significance on this point that the arrangement made was actually disadvantageous to the business. For it passed over the reduction of land charges which the taxpayer might have made by taking up his option to purchase in order to create the income right in the donor's wife, and that, too, at a greater capital cost. For the statutory purposes, the mere creation of a legal obligation to pay is not controlling. Interstate Transit Lines v. C. I. R., 8 Cir., 130 F.2d 136, affirmed 319 U.S. 590, 63 S.Ct. 1279, 87 L.Ed. 1607.

In this respect, then, the case before us does not involve the definite problem presented by the completed assignment of a created product which divided our court and the Fourth Circuit, both inter- and extra-murally, in the two cases of Wodehouse v. C. I. R., 2 Cir., 177 F.2d 881, Id., 4 Cir., 178 F.2d 987. Gift and retained control must be regarded as inseparable parts of a single transaction, especially since it was only in their sum total that they had any reality in regard to the conduct of plaintiff's business. To isolate them, as would be necessary to bring them within the rationale of our own majority ruling in Wodehouse v. C. I. R., supra, is to hide business reality behind paper pretense.

For the question here is as to the tax consequences of a formal gift of certain income-producing properties by the husband to his wife coupled with the informal retention of administrative control—the transfer, in effect, of the right to receive income and the retention of those complex of "use rights" which are usually compressed in the term "ownership." In the context of I.R.C. § 23(a) (1) (A), the question is a rather new one; under I.R.C. § 22(a), 26 U.S.C.A. § 22(a), where it arises in the definition of gross income problems, it is not. And we think the line drawn in the precedents under the latter section is the same as that in the field of deductibility of business expenses. Plaintiff here, for example, accepts as his own the income he has received on the patent equivalent to the royalties he is paying his wife, but then seeks to deduct it as a business expense; in effect this is not different from claiming that the gift itself made the original income hers in the first place.

We think, therefore, that the principles governing the intermarital transfer of income enunciated in Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788, and re-enforced by later cases, are also decisive here. In the case at bar, plaintiff assigned the "legal title" to the patent and provided for his wife's assumption of the "legal title" to the land; but he retained, by formal agreement in the first case, by informal arrangement in the second, the administrative control of these properties. His wife had the right to income, but he had a right to the use of the patent and land. Henson v. C.I.R., 5 Cir., 174 F.2d 846, is thus distinguishable. The Clifford rule is clear, that this direct control, when fused with the indirect control which we must imply from a formal but unsubstantial assignment within the closed family group displaying no obvious business purpose, renders the assignment ineffective for federal tax purposes. The same result should

obtain whether the question arises under § 22(a) or § 23(a) (1) (A) of the Internal Revenue Code.

Plaintiff relies heavily on Skemp v. C.I.R., 7 Cir., 168 F.2d 598, and Brown v. C.I.R., 3 Cir., 180 F.2d 926, certiorari denied C.I.R. v. Brown, 340 U.S. 814, 71 S.Ct. 42, 95 L.Ed. 598. These cases, which are criticized in reasoned discussions in 51 Col.L. Rev. 247 and 59 Yale L.J. 1529, may be thought to go to the verge of the law in support of what are essentially intrafamily transfers. But both, being to trustees, were sufficiently outright, to be distinguishable from our present case. Both involved claimed deductions under I.R.C. § 23(a) (1) (A). In the first, a plaintiff-physician had deeded the building in which he had his office in irrevocable trust for twenty years or until the prior deaths of both himself and his wife, with their children as beneficiaries. He then leased the building back for ten years. In the second, there were two trusts, also irrevocable, terminating on the majority of the beneficiaries who were children of the settlor, coupled with an immediate leaseback of the corpus properties. In upholding the deductions, both courts expressly emphasized the independence of the trustees. It is probable that a like result would probably have obtained had the question been one of gross income under I.R.C. § 22(a). For three factors determine attributability of income to the settlor of a family trust. Whether these are conjunctive tests, see Helvering v. Clifford, supra, 309 U.S. at page 335, 60 S.Ct. 554, or alternative, under the new Clifford regulations, U.S.Treas.Reg. No. 111, § 29.22(a)–21; Kay v. C.I.R., 3 Cir., 178 F.2d 772, it seems likely that in both the cases relied on, income would have been attributable to the trusts and thus to the beneficiaries, rather than the settlors. For (1) the settlors retained no reversionary interests; (2) they retained no dispositive power over either corpus or income; [1] and (3) administrative control was not ex-

1. In the Skemp case, 7 Cir., 168 F.2d 598, 599, the "taxpayer * * * did reserve the right to rent all or a part of the building 'at a rental to be determined by the trustee'"; but this does not con-

stitute "beneficial enjoyment" of the property in the Clifford sense. Moreover, both leases back were for a term and were not coextensive with the life of the trust.

ercisable primarily for the benefit of the settlors.[2] See Alexandre, Case Method Restatement of the New Clifford Regulations, 3 Tax L.Rev. 189.

The Supreme Court has long emphasized the test of retention of practical ownership in passing on the tax consequences of intra-family assignment. Soll, Intra-Family Assignments: Attribution and Realization of Income, 6 Tax L.Rev. 435. In the recent case of C.I.R. v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898, involving the assignment by the inventor-husband of patent licensing contracts to his wife, the court said, "The crucial question remains whether the assignor retains sufficient power and control over the assigned property or over receipt of the income to make it reasonable to treat him as the recipient of the income for tax purposes," 333 U.S. at page 604, 68 S.Ct. at page 722, and went on to note that "The taxpayer's controlling position in the corporation also permitted him to regulate the amount of royalties payable to his wife." 333 U.S. at page 609, 68 S.Ct. at page 725. In essence the assignment in the present case was effective only to the extent of transferring the single right to receive income. It is now too late to question the well-established proposition that mere assignment of such a right will not suffice to insulate the grantor from tax liability under § 22(a), and we think like tax results must obtain under § 23(a) (1) (A). See Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731; Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75; Helvering v. Eubank, 311 U.S. 122, 61 S.Ct. 149, 85 L.Ed. 81. The recent case of C.I.R. v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659, has established the test in the family-partnership field, whether or not there existed as part of the arrangement a "bona fide intent" to have the donee exercise a real part in management, thus giving a final blessing to the doctrine that "true ownership" is decisive in matters of federal taxation. See also C.I.R. v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670, 164 A.L.R. 1135; Harrison v. Schaffner, 312 U.S. 579, 61 S.Ct. 759, 85 L.Ed. 1055; Ingle Coal Corp. v. C.I.R., 7 Cir., 174 F.2d 569.

Since here we find no evidence of a potential exercise of "control and management" on the part of the donee, only of "passive acquiescence to the will of the donor," C.I.R. v. Culbertson, supra, 337 U.S. at pages 747, 748, 69 S.Ct. at page 1217, since the transaction is in all practical respects a "mere paper reallocation of income among the family members," C.I.R. v. Tower, supra, 327 U.S. at page 292, 66 S.Ct. at page 538, and since the husband has remained the actual enjoyer and owner of the property, payments to the wife do not constitute valid business deductions within the statute. See Johnson v. C.I.R., 2 Cir., 86 F. 2d 710; W. H. Armston Co. v. C.I.R, 5 Cir., 188 F.2d 531.

Affirmed.

CHASE, Circuit Judge (dissenting).

Perhaps it would be desirable to protect the revenue by amending Sec. 23(a) (1) (A) to exclude from the business expense deductions now allowed those which become necessary only because of intrafamily gifts of property used, or to be used, in the business. But that is a matter to be determined by Congress and, until it acts, I think courts are bound to give effect taxwise to gifts which are fully effective otherwise.

There is, I think, some distinction between the disallowance of the royalty and the disallowance of the rent deductions. It is that the transfer of the patent by gift to the wife was a transfer of needed business property already owned by the taxpayer which was intended to, and did, make it necessary to pay her the royalties. The gift of the money, however, which she used together with some of her own to buy the building never owned by the taxpayer was not shown to have been of money which had any connection with the business at all and the net result from the standpoint of the taxpayer and his business was merely a change in landlord. However,

---

2. Here the factor of independent trustee-ship is crucial. And it is in this respect that the instant case differs on its facts from the Skemp and Brown results.

as I view this case, it is not necessary to rely upon this distinction.

In respect to the claimed deductions, the decisive factor as the statute is now, is whether the rent and royalty payments were "required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he had no equity." Sec. 23(a) (1) (A). The findings, based on evidence adequately supporting them, show that everything was done to transfer the legal and equitable titles both to the patent and to the building absolutely to the wife, and the ownership she thereby acquired gave her the right to whatever she could get by way of royalties and rents which were, of course, taxable to her as income. And, as Sec. 23(a) (1) (A) is now so broad that no exception is made because of the way in which business expenses become necessary, i. e., by gift or otherwise, the reasonable royalties and rents the husband paid her were, I think, well within the scope of the statute, being "required" by the license and lease arrangements, and therefore deductible. Skemp v. Commissioner, 7 Cir., 168 F.2d 598; Brown v. Commissioner, 3 Cir., 180 F.2d 926, certiorari denied, 340 U.S. 814, 71 S.Ct. 42, 95 L.Ed. 598. See also Henson v. Commissioner, 5 Cir., 174 F.2d 846. The fact that in the Skemp and Brown cases the transfers were to independent trustees for the benefit of family members is a distinction without a difference since that bore only on the completeness of the gifts and reasonableness of the royalties and rentals paid, both here shown and found. W. H. Armston Co. v. Commissioner, 5 Cir., 188 F.2d 531, is distinguishable as an instance of a disguised transfer of dividends to a large stockholder of the corporation.

The cases dealing with problems arising under Sec. 22(a), I.R.C. as to the identity of the taxpayer liable for taxes payable by some one, on which my brothers so much rely, help little, if any, in determining what deductions an identified taxpayer may take under Sec. 23(a) (1) (A) in computing his net income. Assuming, arguendo, that these cases are relevant,[1] factually they are inapplicable. The only basis pointed out by the majority for applying these cases to the facts before us is that the license of the patent and the lease of the buildings given to the taxpayer left "untouched in all practical reality the husband-donor's effective dominion and control over the properties in question." But whatever control the taxpayer received was the control of a licensee and lessee and was conditioned upon making the payments here claimed to be deductible. It would seem erroneous, therefore, to deny the claimed deduction on this basis.

One other point warrants brief mention. My brothers apparently think that the taxpayer is no longer entitled to any rent deduction because, presumably, he could have used the money he gave his wife to buy the building himself and then he would have had no rent to pay. If he had done so, no doubt he would have been allowed as deductions the maintenance costs, taxes, etc., which must have been included in the rent he paid his wife to make it reasonable over all but the effect of this decision may deprive him of even them. I cannot help but think that my brothers have mistakenly applied the business purpose rule of cases like Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596, to a situation where what the taxpayer did was merely to use permissible business judgment as to whether he would increase his business investment or continue to pay reasonable rent.

I would reverse and remand for a judgment for the appellant.

---

1. The only issue to which these cases could be relevant is whether or not the taxpayer was "required" to pay the royalties and rents as a condition to using the property since that is the test set forth in the statute. In order to be relevant to this issue, and to hold as the majority does, it would seem that one must accept the premise that a donor who retains sufficient control over property transferred by him so as to make any income from that property includible in the donor's gross income under Sec. 22(a), is not, as a matter of law, "required" to pay the donee for its use even though he has entered into a firm, and legally enforceable, obligation so to do.