Dr. Edward F. and Mrs. Margaret C. HALL, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Dr. Henry and Mrs. Ellen HUMPHREY, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Dr. Eben and Mrs. Pauline S. TISDALE, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. Nos. 8138–8140.

United States District Court N. D. New York.

Decided July 30, 1962.

F. Robert Gilfoil, Jr., Syracuse, N. Y., for plaintiffs. William MacKay, Syracuse, N. Y., of counsel.

Justin J. Mahoney, U. S. Atty., Albany, N. Y., Bernard Schoenberg, Daniel J. Dinan, Attorneys, Department of Justice, Washington, D. C., Louis F. Oberdorfer, Asst. Atty. Gen., Edward S. Smith, David A. Wilson, Jr., Bernard J. Schoenberg, Attorneys, Department of Justice, Washington, D. C. (on the brief), for defendant.

BRENNAN, Chief Judge.

The validity, for income tax purposes, of a transaction whereby real property was placed in trust for the benefit of members of a family unit and leased back to a grantor is the central problem involved in each of these cases.

In each of the above cases, plaintiffs seek to recover income taxes paid by them in accordance with deficiency assessments imposed as the result of the re-audit of their joint tax returns for the year 1956. The amounts involved are comparatively small, viz; in the Hall action $258.00; in the Humphrey action $228.00; and in the Tisdale action $258.00. This situation is accounted for by reason of the fact that the item in controversy involved only one-fourth of the year 1956. The underlying facts are not in substantial dispute and are presented in the form of a stipulation of facts supplemented by brief oral evidence. The actions were consolidated for the purpose of trial and the essential facts disclosed therein are summarized below.

The three male taxpayers are all physicians practicing their profession at Ithaca, N. Y. At the relevant times involved here, Dr. Hall and his wife, the plaintiff Margaret C. Hall, were the owners of real property known as 114 and 118 W. Buffalo Street, Ithaca, N. Y. This property consisted of two frame residential or office structures at 114 and 118 W. Buffalo Street, together with the lands in the rear thereof. Dr. Hall conducted his medical practice at said property, using a portion thereof for office space, the balance being leased to other tenants. In 1949, Dr. Humphrey, who had been previously employed by Dr. Hall, formed

a partnership with Dr. Hall and engaged in medical practice at said premises. Dr. Tisdale was added as an additional member of the medical partnership in 1950. The partnership, thus formed, paid a rental to Dr. and Mrs. Hall for that part of the property used for partnership purposes. The remaining portion of said property was leased to other tenants, including other practicing physicians. In 1954, Dr. and Mrs. Hall conveyed a one-third interest in the property to Dr. and Mrs. Humphrey and to Dr. and Mrs. Tisdale. Thereafter the rental arrangement as to that part of the premises occupied by tenants, other than the partnership, continued. Such rents were received by Mrs. Hall and deposited in a rental account. The expenses of the property were paid therefrom and the net income then divided among the doctors and their wives in accordance with their interests. The partnership paid no rent for the premises it occupied. The rental paid by other tenants was reported on the partners' income tax returns.

On September 29, 1956, each of the doctors and their wives executed a trust instrument conveying their one-third interest in the property to the Tompkins County Trust Company of Ithaca, N. Y. In substance, the instrument provided for the payment of the net income of the trust to or for the use of each child of the grantors in equal shares. The agreements were identical except as to the grantors and beneficiaries. On the next day, October 1, 1956, the trustee leased to the three doctors that portion of the property conveyed in the trust agreement, occupied and used by them in the practice of their profession. Same consisted generally of the first floor premises at 114 W. Buffalo Street, together with five rooms on the second floor and the area at the rear of said property then being used by the partnership. The lease extended over a period of two years and recited an annual rental of $7200., payable $600. a month in advance. There is no question involved as to the reasonableness of the rental charge, same being fixed upon a square foot basis and in ac-

cordance with the rate at which other portions of said premises were leased by the trustee; neither is there a question raised as to the necessity of the use of said premises in the professional business of the partnership.

The dispute here arises in the following manner. In the medical partnership income tax return for the year 1956, $1800. was deducted as a trade or business expense under the provisions of I. R.C. § 162(a) (3), 26 U.S.C. § 162(a) (3). This sum represented the rental paid by the partnership to the trustee in accordance with the terms of the partnership lease. Upon examination, the Commissioner of Internal Revenue disallowed such deduction. Such disallowance increased each partner's share of the partnership net income in the amount of $600. which was reflected in the individual joint tax returns filed by each partner and his wife. The resulting deficiency is the basis for the imposition of the tax referred to above. The additional assessment was paid by the plaintiffs and the necessary preliminary procedures for the institution of these actions were taken.

It is well recognized that intra-family transactions, resulting in the distribution of income within a family unit, are subject to special scrutiny. Commissioner of Internal Revenue v. Tower, 327 U.S. 280 at 291, 66 S.Ct. 532, 90 L.Ed. 670; Helvering v. Clifford, 309 U.S. 331 at 335, 60 S.Ct. 554, 84 L.Ed. 788. It would therefore seem logical to examine the trust instruments here to ascertain the effect thereof insofar as taxability is concerned. Deductions are matters of grace rather than matters of right and the burden is on the taxpayer to show his right thereto. Interstate Transit Lines v. Commissioner, 319 U.S. 590 at 593, 63 S.Ct. 1279, 87 L.Ed. 1607. It follows that economic reality, rather than the validity of the trust instrument, must be the basis upon which the right to the deduction rests.

The trust instruments provide that the property conveyed shall be held during the lifetime of either of the grantors.

The net income from each trust is to be paid in equal shares, to or for the use of the children of the grantors. Upon the death of either child of the grantors or upon the death of one of the grantors themselves, the principal of the trust fund shall be paid over to the surviving grantor if he or she be then living. If he or she be not then living, the principal shall be disposed of according to the distribution made by the surviving grantor by will and if no such distribution is made, then the principal shall be paid to the executors or administrators of the estate of the surviving grantor. Paragraph Fourth of the trust instrument provides that the trust may be revoked by the grantor after ten years and the corpus of the fund turned over to the grantors. It also provides that the grantors may amend or modify the agreement upon the expiration of ten years from its date. The grantors and either beneficiary, after attaining his or her majority, or the grantors alone during the minority of either beneficiary may approve and settle the accounts of the trustee and such settlement shall be binding upon all persons interested in the trust. It is plain from the provisions of paragraph Third of the trust instrument that the intention thereof was to use the income for the education of the individual beneficiaries; the grantors expressing the intention to provide for the maintenance and support of said beneficiaries apart from the provisions of the trust agreement. For all practical purposes, the effect of the trust agreement was to convey to the beneficiaries the income of the trust property for an indeterminate period of years. The corpus of said fund under no conditions could pass to the beneficiaries or ultimately escape from the ownership and control of the grantors.

It is apparent that the Commissioner in making the assessments here determined that the transactions served no obvious business purpose and failed to divest the grantors of such control and ownership of the trust property as to warrant the allowance of the claimed deductions. He held in effect that each trust instrument "was a mere paper reallocation of income among the family members". Commissioner of Internal Revenue v. Tower, supra, 327 U.S. at 292, 66 S.Ct. at 538, 90 L.Ed. 670.

In assuming the burden cast upon them, the plaintiffs contend that the transactions were actuated by a desire to provide for the education of their children even though tax savings were admitted to have played a part therein. They urge that less than 50% of the trust property is involved in the matter of the claimed deduction and that the trustee here was independent of domination or control by the grantors. They further contend that the transfer and leaseback arrangement did not involve the same legal entities, the grantors being individuals while the partnership was a separate entity in which one of the grantors has no interest.

It is the substance of the the transactions rather than the language of the instruments that must control the appraisal thereof. Here death of a grantor or beneficiary immediately voided the trust instrument. The grantors or their estates were alone the remaindermen and at all times retained the power to ultimately dispose of the corpus of the trusts. The grantors reserved the right to settle the accounts of the trustee. It is true that the trustee could have his accounts settled by a court if such course was deemed advisable. Whether or not such court settlement would override settlement made by the grantors need not be decided but it is plain that by this device, the grantors retained an effective means of control over the actions of the trustee.

Turning now to the legal precedents which will serve as a guide to the decision here, we find that, for all practical purposes, but three decisions require discussion. The Government relies upon the decision in this circuit of White v. Fitzpatrick, 2 Cir., 193 F.2d 398, certiorari denied 343 U.S. 928, 72 S.Ct. 762, 96 L. Ed. 1338. This decision was by a divided vote and is distinguishable from the

instant cases in that a transfer of property was made by husband to wife with the leaseback to the husband. Here a trustee is involved. The rationale of that decision and the authorities cited therein are recognized in later decisions. Several such cases are cited by the defendant but the problem is one of applying the recognized rule to the facts of a particular case.

The plaintiffs rely principally upon the decisions in Skemp v. Commissioner, 7 Cir., 168 F.2d 598 and Brown v. Commissioner, 3 Cir., 180 F.2d 926. The latter case was also decided by a 2–1 vote. Both decisions are referred to and discussed in White v. Fitzpatrick, supra, 193 F.2d at 401 where it is stated that "These cases * * * may be thought to go to the verge of the law in support of what are essentially intra-family transfers".

The Skemp case, in its underlying facts, has a similarity to the facts in the instant cases. It is to be noted however that in that case, the settlor of the trust retained no reversionary interest in or no power of disposition of the corpus of the trust fund. In that case, the independence of the trustee was the factor upon which the court leaned heavily. In the present cases, it can hardly be said that a trustee is wholly independent or has full freedom of action where the grantors had the reversionary interest and also the right to settle its accounts. In the Skemp and Brown cases, unlike the situation here, the corpus of the trust estate became the property of the beneficiaries upon the termination of the trust. In other words, the settlor wholly divested himself from any interest in the trust property. It seems therefore that these cases are distinguishable from the two decisions relied upon by the plaintiffs and that the decisions therein should not be extended to cover the situation here.

This court is not impressed by the contention that the transactions here may escape the application of the rule as to inter-family transfers by reason of the different entities involved. There is no escape from the fact that the transfer and leaseback arrangement here resulted in a re-allocation of income within intimate family groups. Technical considerations may not "obscure the basic issue". Helvering v. Clifford, supra, 309 U.S. 334, 60 S.Ct. 554, 84 L.Ed. 788.

The conclusion here is expressed by adopting the language of White v. Fitzpatrick, supra, 193 F.2d at page 402 as follows: "In essence the assignment in [this] case [were] effective only to the extent of transferring the single right to receive income. It is now too late to question the well-established proposition that mere assignment of such a right will not suffice to insulate the grantor from tax liability * * * *".

The Government advances another argument which requires comment. It is to be noted that section 162(a) (3) of the I.R.C., 26 U.S.C. § 162(a) (3) provides for the allowance as a deduction from taxable income all rentals or payments required to be made for the use or possession of property for business purposes "to which the taxpayer has not taken or is not taking title or *in which he has no equity.*" (Emphasis added). The Government contends that the members of the medical partnership have an equity in the property involved and hence the rental deduction is properly disallowed. This contention is not extensively argued and no case is cited which may be termed as authoritative. The application of the section would depend upon the meaning of the word "equity" as is contained therein. The trustee certainly holds the legal title to the trust property but no one, other than the grantors or their estates, can ever acquire a fee interest therein. The beneficial interest always remains with the taxpayer. Even though the trustee had the power of sale, it owed such a duty to the grantors as a fiduciary as to require the protection of their interest. In any event, it would seem that the grantors had an equity in the premises at least until the power of sale was exercised and for that reason also the Commissioner was right in disallowing the deduction.

This decision, together with the stipulation of facts filed herein, will constitute the findings of fact of this court and it is concluded the complaint in each of the actions must be dismissed, and it is

So Ordered.