## I. L. VAN ZANDT AND RUTH B. VAN ZANDT, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 92670. Filed August 8, 1963.

*R. B. Cannon,* for the petitioners.
*Williard A. Herbert,* for the respondent.

### OPINION

DAWSON, *Judge:* Respondent determined deficiencies in the income tax of petitioners for the years 1958 and 1959 in the respective amounts of $1,698.57 and $2,679.95. The only issue presented is whether payments made during 1958 and 1959 by petitioner, I. L. Van Zandt, to two trusts as rental for a building and certain medical equipment,

which he had previously transferred to the trusts and leased back for his use in the practice of medicine, are deductible as ordinary and necessary business expenses under the provisions of section 162(a)(3).[1]

All of the facts have been stipulated by the parties. The stipulation of facts and exhibits attached thereto are incorporated herein by reference.

I. L. Van Zandt and Ruth B. Van Zandt (hereinafter called petitioners) are husband and wife residing in Fort Worth, Tarrant County, Tex. Throughout the calendar years 1958 and 1959, and prior and subsequent thereto, I. L. Van Zandt (hereinafter sometimes referred to as petitioner), was engaged in the practice of medicine, specializing in surgery, at 905 and 915 Fifth Avenue in Fort Worth.

Petitioner's professional books and records are kept on a calendar year and cash basis. He and his wife filed their joint income tax returns on the same basis for 1958 and 1959 with the district director of internal revenue at Dallas, Tex.

In the practice of his profession the petitioner, among other facilities, uses offices, a reception room, a laboratory, X-ray and other equipment.

On April 29, 1957, the petitioners signed a single instrument creating two separate and distinct trusts. One, styled the Neil Van Zandt Trust, was for the benefit of their son, Neil Van Zandt, and the other, styled the Eugenia Van Zandt Trust, was for the benefit of their daughter, Eugenia Van Zandt. The trust instrument provides as follows:

That we, I. L. VAN ZANDT and wife, RUTH BODDEKER VAN ZANDT, of the state and county aforesaid (who, in their capacity as grantors, will sometimes hereinafter be styled "trustors") for the purpose of establishing the trusts hereinafter set up, and in consideration of the love and affection which we, and each of us, bear for our children, the beneficiaries of said trusts, have transferred, assigned and paid over and do hereby transfer, assign and pay over unto I. L. Van Zandt in his capacity as the original trustee of the trusts herein set up the sum of $200.00 in cash which shall constitute the aggregate original corpora of the two trusts herein created. And the said I. L. Van Zandt, as such trustee, hereby acknowledges the receipt of said sum and hereby declares that he shall, and that his successor or successors will, hold said sum and all revenues, additions and changes in the corpora of the two trusts herein created in trust for the use and purposes and upon the terms and conditions hereinafter set forth and for the benefit of those hereinafter specified. That is to say:

### ARTICLE ONE

The trustors intend to and do create hereby two separate and distinct trusts. One of these trusts is for the use and benefit of their son, Neil Van Zandt, born June 10, 1945. This trust shall be known as the Neil Van Zandt Trust. The

---

[1] All Code references in this opinion are to the Internal Revenue Code of 1954.

other trust is for the use and benefit of their daughter, Eugenia Van Zandt, born August 10, 1946. This trust shall be known as the Eugenia Van Zandt Trust. One-half of the sum of $200.00 so paid by grantors to the trustee as hereinabove provided shall constitute the original corpus of each of said trusts. The separate identity of each of said trusts shall always be maintained by the trustee in the trustee's books, records and accounting and in all other ways and for all other purposes.

## ARTICLE TWO

Each trust hereby created shall continue until June 30, 1967, save and except that the prior death of its beneficiary shall terminate the trust. If a trust created hereby is terminated by the death of its beneficiary, any undistributed income of the trust then on hand shall be disposed of as provided in the deceased beneficiary's Will should such beneficiary leave a valid Will failing which such undistributed income shall pass to and vest in those persons entitled to the same under the laws of descent and distribution of the State of Texas then in force and effect. Unless sooner terminated by the death of its beneficiary, each trust created hereby shall, as hereinabove set out, terminate June 30, 1967. Any and all undistributed income of the trust then on hand shall be distributed to the beneficiary of the trust, and the trust corpus shall pass to and revest in grantors.

## ARTICLE THREE

During the minority of the beneficiary of a trust created hereby the income of that trust shall be accumulated by the trustee for the benefit of such beneficiary except that if during such period of minority neither of the trustors is financially able to provide for the care, support, maintenance and education of such beneficiary, so much of the income of that beneficiary's trust as the trustee deems appropriate may be expended to provide such care, maintenance, education and support. After the beneficiary of a trust created hereby reaches the age of twenty-one, there shall be distributed to such beneficiary periodically and as often as once each year all of the net income of that beneficiary's trust received after such beneficiary reaches the age of twenty-one years. Should the trustee determine such action to be for the best interest of the beneficiary, after the beneficiary attains the age of twenty-one years, there may be distributed to the beneficiary for the furtherance of his or her education, for the purpose of applying on the purchase of a home should the beneficiary be then married, and for such other purposes as, in the sole discretion of the trustee, may appear to be for the best interest of the beneficiary, part or all of the income of the trust that accumulated during the minority of the beneficiary.

## ARTICLE FOUR

Except as otherwise expressly provided herein, each trust created hereby shall be governed, controlled and administered under and in accordance with the terms of the Texas Trust Act as it may exist as of the time any determination is made or required to be made under this instrument. For so long as the original trustee, I. L. Van Zandt, is the trustee of the trusts created hereby, there shall be no restriction as to the character of investments which he may make of trust funds or of the business activities in which he may engage on behalf of the said trusts or either of them, save and except that no funds of the trusts, or either of them, may be loaned to trustors or either of them without adequate security or at less than the rate of interest then currently being charged on commercial

loans by representative banks, members of the Fort Worth Clearing House Association, nor may the trustee purchase trust assets or, himself, lease or otherwise occupy trust property for less than the fair market value of such assets or right of occupancy. When the original trustee is no longer serving as such, any successor trustee may continue to hold, so long as he or it may deem appropriate, any holding or investment on hand at the time the original trustee ceases to be such, but in making new investments and reinvestments, such successor trustee shall be limited to investments of the character which are then lawful investments of trust funds under the provisions of the Texas Trust Act as it may exist at the time such investment or reinvestment is made.

## ARTICLE FIVE

No bond or security shall be required of the original or the first successor trustee herein provided for. When and if there are successor co-trustees, neither shall be liable for the misconduct or default of the other. Successor co-trustees may delegate to each other such ministerial duties in connection with said trusts as they may deem appropriate, including keeping of books and records and the safekeeping of property or securities.

The trustee (which term shall include a successor trustee or trustees, whether one or more, currently acting) shall always maintain complete and adequate books and records with respect to each trust. These books and records shall be open at all reasonable times to inspection by any party at interest or their duly authorized agents. After the beneficiary of a trust reaches the age of twenty-one, such books and records shall similarly be open to inspection by such beneficiary or such beneficiary's duly authorized agent and such adult beneficiary shall be furnished annually a statement showing the condition of his or her trust and the results of its operations since the last preceding statement.

The trustee may accept from trustors, or either of them, or from any one else any addition or gift, whether testamentary or inter vivos, if the trustee deems it to be for the best interest of the receiving trust and its beneficiary to accept such addition or gift, but the trustee shall never be required to accept any addition or gift considered burdensome or not for the best interest of said trust and its beneficiary.

## ARTICLE SIX

No beneficiary of a trust created hereby shall ever have or acquire the right or power in any wise to mortgage, pledge, anticipate, assign or convey his or her interest in a trust created hereby or the income therefrom nor shall the corpus or income of any trust created hereby ever be or become liable for any debt, demand or claim, including claims sounding intort [sic] or in the nature of alimony due by or asserted against such beneficiary or liable to seizure, sale or any other process to secure or satisfy any such asserted debt, claim or demand. Whenever and as often as the trustee deems it appropriate in order to carry out the spirit and purpose of this provision, in lieu of paying over to a beneficiary distributions of income otherwise permissible hereunder or directed in this instrument, the trustee himself may expend for the support, maintenance, education, welfare or happiness of such beneficiary all or part of the amount that otherwise would be distributed to the beneficiary. Distribution of income for minor beneficiaries may be made in whole or in part either directly to the minor beneficiary or to the parent or legal guardian of such minor beneficiaries, or may be expended for the maintenance, support, care, education, welfare or happiness of such minor beneficiaries.

## ARTICLE SEVEN

If, during the existence of a trust created hereby, the original trustee dies, becomes incapacitated, resigns or is removed from the trusteeship of such trust, then The Fort Worth National Bank of Fort Worth, Texas, shall become the sole successor trustee of the trust or trusts as to which such vacancy exists. It is the intention of trustors that each trust created hereby shall always have the same trustee or co-trustee and if the trusteeship of any trust created hereby becomes vacant for any reason this fact shall ipso facto create a similar vacancy in the trusteeship of the other trust created hereby.

No trust created hereby shall ever fail for want of a trustee, and if a vacancy in trusteeship occurs which is not herein provided for, the vacancy shall be filled by a District Court of Tarrant County, Texas, upon the application of any party at interest, but in exercising this power of appointment the appointing court shall appoint only a state or national bank subject to Federal or State supervision doing business in Texas, authorized to accept and effect trusts, and having at the time of its appointment as disclosed by its last official statement published prior thereto unimpaired capital and surplus of $1,000,000 or more.

As used herein, unless the context plainly requires a different meaning, the term trustee shall mean and include whomsoever whether one or more is or are acting as trustee or co-trustees hereunder.

## ARTICLE EIGHT

The trustee shall, in addition to reasonable compensation for his or its services as such, be entitled to employ and compensate from trust funds all necessary agents, employees and attorneys and to indemnification and reimbursement from trust funds for all liabilities properly incurred as such trustee. The trustee shall always be entitled to the advice of counsel and to rely upon the advice of counsel selected and retained with reasonable care. No trustee shall ever be liable for mistakes in judgment or otherwise than for his negligence or breach of trust.

## ARTICLE NINE

The trustors and each of them acknowledge and declare that the gift evidenced hereby and the trusts hereby created are and are intended to be irrevocable insofar as any power of grantors to revoke is concerned and that the same shall endure until terminated in the manner specified in this trust instrument and that this decision has been reached after full and mature consideration.

On May 23, 1957, the petitioners executed and delivered to I. L. Van Zandt, trustee of the Neil Van Zandt and the Eugenia Van Zandt Trusts, a document transferring the real property, including improvements, located at 905 and 915 Fifth Avenue, Fort Worth, Tex., and on the same day I. L. Van Zandt, individually, executed and delivered to I. L. Van Zandt, trustee of the Neil Van Zandt and the Eugenia Van Zandt Trusts, a document styled "Bill of Sale," pertaining to X-ray and other equipment.

Also on May 23, 1957, two documents, each styled "Lease," one covering the premises and improvements located at 905 and 915 Fifth Avenue, Fort Worth, and the other covering certain X-ray equipment and other equipment located in and on the aforesaid prem-

ises were executed by the Neil Van Zandt Trust and the Eugenia Van Zandt Trust to I. L. Van Zandt individually.

During the years 1958 and 1959 the premises at 905 and 915 Fifth Avenue, consisting of offices, reception room, laboratory, and equipment, were occupied and used by the petitioner in his practice of medicine.

The amounts and considerations (i. e., agreements to pay ad valorem taxes, to maintain, etc.) recited as "Rents" or "Rental" in the leases, did not exceed reasonable rental for such property.

The petitioner paid to or for the Neil Van Zandt Trust and the Eugenia Van Zandt Trust jointly the sums of $4,800 during the calendar year 1958 and $6,304.30 during the calendar year 1959. The sum of $4,800 so paid in 1958 was based on the item of cash rental specified in the leases; and the amount of $6,304.30 paid in 1959 represented the cash rental of $5,200 provided for by the leases and the sum of $305.60 for repairs and $798.70 for insurance on the property, premises, and equipment described therein.

Respondent, treating petitioners' claimed rental expense deductions for the calendar years 1958 and 1959 as being composed of the separate items entering into the computation of the amounts deducted as rent in their returns for those years, disallowed $4,800 of the amount claimed for 1958 and $5,200 of the amount claimed for 1959 because he determined that the office building and medical equipment were petitioner's properties and, consequently, no deduction for rentals with respect thereto was allowable. In lieu thereof, respondent allowed petitioners a depreciation deduction for each of the calendar years 1958 and 1959 with respect to the office building and improvements and X-ray equipment involved.

Respondent disallowed that portion of petitioners rental deduction for the calendar year 1959 based on "repairs" in the amount of $305.60 because respondent determined that the cost of a new roof was a nondeductible capital expenditure. He has allowed petitioners a depreciation deduction for the calendar year 1959 in the amount of $15.28 on this capitalized item.

Before us is the narrow question of rental deductions, and not *to whom* trust income is taxable. Petitioner contends that the rental payments he made to the trusts during 1958 and 1959 fall squarely within the provisions of section 162(a)(3)[2] and, therefore, are deductible as

---

[2] SEC. 162. TRADE OR BUSINESS EXPENSES.

(a) IN GENERAL.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

\*       \*       \*       \*       \*       \*       \*

(3) rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity.

ordinary and necessary expenses paid in carrying on his medical practice. He relies on four decisions: *Skemp* v. *Commissioner*, 168 F. 2d 598 (C.A. 7, 1948), reversing 8 T.C. 415 (1947); *Brown* v. *Commissioner*, 180 F. 2d 926 (C.A. 3, 1950), reversing 12 T.C. 1095 (1949); *Albert T. Felix*, 21 T.C. 803 (1954); and *John T. Potter*, 27 T.C. 214 (1956).

The *Potter* case is clearly distinguishable because there the principal question was "whether the royalties petitioner agreed to pay were excessive." We held they were not.

In the *Skemp*, *Brown*, and *Felix* cases the independence of the trustee was the determinative factor. But here there is no independent trustee. Complete control over these trusts is in the hands of petitioner, who is the sole trustee and will continue as such until he dies, becomes incapacitated, resigns, or is removed. For this reason, if for no other, petitioner has failed to bring himself within the ambit of these three decisions. Cf. *Ingle Coal Corporation* v. *Commissioner*, 174 F. 2d 569 (C.A. 7, 1949), affirming 10 T.C. 1199 (1948), where the transfer of property was not to an independent third party.

Moreover, it is well recognized that intrafamily transactions resulting in the distribution of income within a family unit are subject to the closest scrutiny. *Helvering* v. *Clifford*, 309 U.S. 331 (1940); *Commissioner* v. *Tower*, 327 U.S. 280 (1946). Where, as here, the trusts and leasebacks are steps in a prearranged transaction, we think it is necessary to examine the true nature of the transaction and aim our inquiry at seeing if the *net effect* has been a shift of family income. Clearly, the effect of this transaction, while valid, was to cause a shift of family income and thus subvert the intended coverage of the statute. It would seem that economic reality, rather than the validity of the documents creating the trusts, the transfers and the leases, must serve as the basis upon which the right to the deduction rests.

To hold for the petitioner would be inconsistent with another line of decisions. Where a sale and leaseback does not serve a utilitarian business purpose, but is in reality a camouflaged assigment of income, the expenses have not been considered "ordinary and necessary." See *W. H. Armston Co.* v. *Commissioner*, 188 F. 2d 531 (C.A. 5, 1951), affirming 12 T.C. 539 (1949); *Unger* v. *Campbell*, 7 A.F.T.R. 2d 547, 61–U.S.T.C. par. 9163 (N.D. Tex. 1960); and *White* v. *Fitzpatrick*, 193 F. 2d 398 (C.A. 2, 1951), certiorari denied 343 U.S. 928. The same result has been reached where the transfer was in the form of a gift. *Johnson* v. *Commissioner*, 86 F. 2d 710 (C.A. 2, 1936), affirming 33 B.T.A. 1003 (1936). Since deductions are matters of legislative grace and the taxpayer has the burden of proving he is entitled to them, the petitioner here must establish that the rental payments were in fact "ordinary and necessary" expenses in his medical practice. While they may be ordinary, were they necessary under these circum-

stances? We think not. The petitioner owned and used the building and medical equipment in his "trade or business" before he ever created the trusts, transferred the property to the trusts, and then leased it back. Actually he continued to use the property in exactly the same manner as he had before these transactions were arranged and carried out. This indicates a lack of any business purpose, which we believe is implicitly required by section 162(a). See *Gregory* v. *Helvering*, 293 U.S. 465 (1935) ; *W. H. Armston Co.* v. *Commissioner, supra; Unger* v. *Campbell, supra;* and *Hall* v. *United States*, 208 F. Supp. 584 (N.D. N.Y. 1962).

Accordingly, we conclude that the rental payments are not deductible as ordinary and necessary busines expenses.

*Decision will be entered for the respondent.*

