Sidney W. Penn and Barbara F. Penn, Petitioners *v.* Commissioner of Internal Revenue, Respondent

Docket No. 370-67. Filed October 24, 1968.

*Bruce I. Hochman* and *Harvey D. Tack*, for the petitioners.
*James Cotter*, for the respondent.

OPINION

Raum, *Judge:* Section 162(a) of the Internal Revenue Code of 1954 allows as a deduction "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—* * * (3) rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property *to which the taxpayer has not taken or is not taking title or in which he has no equity.*" (Emphasis added.) Thus, a taxpayer who owns or has an "equity" in property used in his trade or business, though he is entitled in appropriate cases to depreciate the cost of that property over its useful life, sec. 167, I.R.C. 1954, and to deduct the ordinary and necessary expenses of maintaining it, sec. 162, *supra*, may not claim in place of or in addition to such amounts a deduction for its fair rental value, or any other sum, as rent. Though this proposition seems obvious enough, some taxpayer-owners have sought to avoid its impact through the now familiar technique of the sale and leaseback, which, in the intrafamily context such as that involved herein, often becomes the "gift" and leaseback. The mere transfer of legal title to property, however, is not conclusive for Federal income tax purposes, for the "sale" that lacks economic reality and business purpose, and the "gift"

that leaves the donor with substantially the same control over the property that he had before, will simply be disregarded. See, e.g., *W. H. Armston Co.* v. *Commissioner*, 188 F. 2d 531 (C.A. 5), affirming 12 T.C. 539; *Van Zandt* v. *Commissioner*, 341 F. 2d 440 (C.A. 5), affirming 40 T.C. 824, certiorari denied 382 U.S. 814. Notwithstanding the transfers in trust by which petitioners conveyed a portion of their legal estate in the medical building used exclusively by petitioner Sidney Penn in his practice of ophthalmology, we think petitioners retained and indeed exercised sufficient dominion and control over such property during the years in issue as to justify their treatment as the true owners thereof for the purposes of section 162(a), so that they are precluded from deducting any sums as "rent" under that section in respect of such property.

The basic approach to be followed in cases such as this, involving intrafamily transfers in trust which divest the grantor of little more than bare legal title to the property transferred, and even that only temporarily, was outlined by the Supreme Court over 25 years ago in *Helvering* v. *Clifford*, 309 U.S. 331, 334–335, as follows:

> Technical considerations, niceties of the law of trusts or conveyances, or the legal paraphernalia which inventive genius may construct as a refuge from surtaxes should not obscure the basic issue. That issue is whether the grantor after the trust has been established may still be treated, * * * as the owner of the corpus. See *Blair* v. *Commissioner*, 300 U.S. 5, 12. In absence of more precise standards or guides supplied by statute or appropriate regulations,[1] the answer to that question must depend on an analysis of the terms of the trust and all the circumstances attendant on its creation and operation. And where the grantor is the trustee and the beneficiaries are members of his family group, special scrutiny of the arrangement is necessary * * * [Footnote omitted.]

*Clifford*, it is true, dealt with the question of whether the grantor of a trust might be taxed upon the trust's income under the predecessor of section 61, I.R.C. 1954, but the principles enunciated therein are equally applicable, and have previously been applied, in determining whether a "donor" has retained such dominion and control over his "gift" to a family member as to prevent him from deducting "rents" and "royalties" paid to such family member for his use of the "donated" property. *White* v. *Fitzpatrick*, 193 F. 2d 398 (C.A. 2), certiorari denied 343 U.S. 928. And though "precise standards or guides," including the so-called 10-year rule, have since been supplied by Congress with respect to the inclusion of trust income in the income of the grantor on the grounds of his dominion and control over the trust, see secs. 671–677, I.R.C. 1954, those standards have "no application in determining the right of a grantor to deductions for payments to a trust under a transfer and leaseback arrangement." S. Rept. No. 1622, 83d Cong., 2d Sess., p. 365 (1954).

Taking the approach indicated by *Clifford*, then, we have no doubt that petitioners must be considered the owners of the medical building both before and after their transfers in trust. Prior to the construction of this building, Sidney had been in practice with another physician, but that partnership was dissolved and Sidney decided to go out on his own and to build his own medical facilities. He acquired a plot of land and personally supervised the design and construction of a medical building thereon which would meet the needs of his practice. There was no question, either before or after the transfer of the building to the children's trusts, that it would be used by him in his practice; indeed, this was obviously the very purpose of his buying the land and constructing the building. He did in fact occupy the medical building after its completion and after the transfers in trust,[1] and it has been used exclusively in connection with his medical practice ever since.

The transfer of the building to eight trusts for the benefit of their four children did not, then, cause any change in petitioners' planned use of the building and an examination of the terms of the trust agreements shows how little petitioners actually did give up. Sidney was named sole trustee of each of the trusts, and Barbara was to serve as successor trustee in the event of his death, resignation, or incapacity. Petitioners retained a reversion in the building which, for all practical purposes, could take effect in somewhat less than 11 years after the trusts were created, since Sidney as sole trustee could declare any or all of the eight trusts at an end after December 31, 1967. As sole trustee, Sidney also had discretionary powers over trust income (if he ascertained that "the economic status of the parents of a minor beneficiary * * * [was such] that said parents * * * [were] currently unable to defray the ordinary and customary expenses of support, maintenance, welfare or education of such beneficiary"), and the invasion of the trust corpus (in the event of any "emergency" in the affairs of the beneficiaries by reason of "sickness, accident or other unusual circumstances"). More significant, however, were the powers Sidney retained over the administration of the trust corpus, including

---

[1] He occupied the property for some months prior to transferring it to the trusts. The record shows that the building was completed in December 1960, and petitioners would have us believe that it was promptly transferred to the trusts on Jan. 1, 1961. Although it is true that the deeds to the trusts are "dated" Jan. 1, 1961, it is clear that they were prepared by petitioners' attorney, Myron Blumberg, who notarized the deeds on July 17, 1961, which were in fact recorded on July 18, 1961. On this state of the record, bearing in mind that the burden of proof was on petitioners, it is a reasonable inference that the deeds were not executed prior to July 17, 1761, and we have drawn that inference in our findings of fact. Moreover, since the deeds and the trust agreements were part of the same package prepared by Mr. Blumberg, we have drawn the further inference, in the absence of any convincing evidence to the contrary, that the trust agreements similarly were not executed prior to July 17, 1961.

of course the medical building in respect of which petitioners claim to be entitled to deductions for rent. He had, *inter alia*, the power to sell or exchange all trust property, to rent or lease it "for terms ending during or after the termination of this trust," to make repairs and improvements to real property and to determine the extent to which such repairs and improvements should be apportioned between principal and income, and to encumber trust property by mortgage or otherwise. And he could freely exercise such powers "notwithstanding that he may also be acting individually, or as trustee of other trusts" so long as he acted in a "fiduciary capacity."

The informal manner in which Sidney acted after the conveyance of the medical building to his children's trusts lends further support to the conclusion that he (and his wife) remained the true owners of such property. For, although Sidney occupied the medical building during each of the years 1961, 1962, and 1963, there was no written lease between Sidney, as trustee, and Sidney individually, during any of these years which granted him the right of possession. Perhaps the absence of a written lease would not be important in determining the availability of a deduction for rent under section 162(a)(3) where the parties have dealt with one another at arm's length. However, in light of the obvious possibilities of abuse, where a taxpayer enters into such transaction with members of his family group, or with himself acting in another capacity, without specifically setting forth the consequences of the transaction, the rights and obligations of the parties, in some formal, binding way, there may be serious question as to whether payments made in such circumstances qualify as bona fide rent under the statute. Certainly, the method by which Sidney allegedly rented the medical building to himself during the years in issue cannot withstand the "special scrutiny" which must be accorded all such transactions. For example, rent is ordinarily paid monthly or at some other stated interval, yet Sidney's payments were of such random character, both as to amount and time, as to indicate that they were made solely at his convenience without regard to any fixed legal obligation. Moreover, the payments of "rent" made by Sidney from time to time during 1961, 1962, and 1963, aggregating $9,000 per year, were in excess of $7,200 which the parties have stipulated was the fair rental value of the property during those years. Cf. *Kirschenmann* v. *Westover*, 225 F. 2d 69 (C.A. 9), certiorari denied 350 U.S. 834. Finally, although the property was not transferred to the trusts prior to July 17, 1961, footnote 1, *supra*, petitioners claimed a rental deduction of $9,000 *for the entire calendar year 1961*, thereby casting further doubt upon the bona fides of the entire transaction and providing further support for the conclusion that it lacked economic reality and

was intended merely as an artificial reallocation of income within the immediate family that will not be given effect for tax purposes. Cf. *Van Zandt* v. *Commissioner*, 341 F. 2d 440 (C.A. 5), affirming 40 T.C. 824, certiorari denied 382 U.S. 814; *Furman* v. *Commissioner*, 381 F. 2d 22 (C.A. 5), affirming 45 T.C. 360.

In light of all the facts and circumstances surrounding the creation and operation of the trusts, including the fact that the tax-savings purpose obviously played a significant part in the "gift"-leaseback arangement, cf. *Van Zandt* v. *Commissioner*, 341 F. 2d at 441–442, and the terms of the trusts themselves, most especially the administrative powers of control over trust property retained by Sidney as sole trustee, we find that petitioners remained the true owners of the medical building and that they are therefore not entitled to deduct any amounts as "rent" for its use during 1961, 1962, and 1963. Cf. *Helvering* v. *Clifford*, *supra*. To be sure, as petitioners point out, the attributes of ownership in the medical building which were retained in the trust agreements, such as the right to sell, lease, improve, and encumber the property, may not be exercised as freely after the conveyance in trust as they were before, since the law of trusts now imposes fiduciary responsibilities upon Sidney as trustee. But the dilution in control which such fiduciary obligations effect is not deemed significant where "as a result of the terms of the trust and the intimacy of the familial relationship * * * [the taxpayer has] retained the substance of full enjoyment of all the rights which previously he had in the property. That might not be true if only strictly legal rights were considered. But when the benefits flowing to him indirectly through * * * [other members of the family group] are added to the legal rights he retained, the aggregate may be said to be a fair equivalent of what he previously had." See *Helvering* v. *Clifford*, 309 U.S. 331, 335–336.

The cases of *Skemp* v. *Commissioner*, 168 F. 2d 598 (C.A. 7) reversing 8 T.C. 415, and *Brown* v. *Commissioner*, 180 F. 2d 926 (C.A. 3), reversing 12 T.C. 1095, relied upon by petitioners, are distinguishable. In those cases, this Court held that no deduction for rent was allowable to a taxpayer after an intrafamily gift in trust and leaseback, even where he had transferred his entire interest in the trust property and had no control over the trustee, if by the terms of the trust agreement or by informal agreement with the trustee, it had previously been arranged for the property to be immediately leased back to the taxpayer. The Courts of Appeal for the Seventh and Third Circuits reversed on the grounds that, once it is determined that the transfer "wholly * * * [divested] the taxpayer of any interest in the trust

property" and "a new independent owner" comes into the picture, an arm's-length agreement to pay reasonable rentals must be recognized for tax purposes. *Skemp* v. *Commissioner*, 168 F. 2d at 599–560, *Brown* v. *Commissioner*, 180 F. 2d at 929, followed in *Albert T. Felix*, 21 T.C. 794. These cases obviously have no application where, as here, there has not been a complete divestiture by the grantor of his interest in the trust property to a new, "independent" owner, and the "rentals" paid were not reasonable in amount. Indeed, the fact that such cases involved an "independent trustee" has frequently been referred to as an important or distinguishing feature. See *Ingle Coal Corporation* v. *Commissioner*, 174 F. 2d 569, 572 (C.A. 7), affirming 10 T.C. 1199; *White* v. *Fitzpatrick*, 193 F. 2d at 401–402 (C.A. 2); *Hall* v. *United States*, 208 F. Supp. 584, 588 (N.D. N.Y.); *I. L. Van Zandt*, 40 T.C. at 830; *Alden B. Oakes*, 44 T.C. 524, 529; *Irvine K. Furman*, 45 T.C. 360, 364, affirmed 381 F. 2d 22 (C.A. 5). Also, it should be noted that the *Skemp* and *Brown* cases were referred to by the Court of Appeals in *White* v. *Fitzpatrick*, 193 F. 2d at 401, as going "to the verge of the law in support of what are essentially intrafamily transfers." See also *Hall* v. *United States*, 208 F. Supp. at 588.

Finally, petitioners insist that the conveyance of their reversionary interests in the trust property to their children in 1963 completely divested them of any interest in the property, and that, at least after such time, they should be allowed a deduction for rent. It should be noted initially that although the quitclaim deeds by which petitioners conveyed their reversionary interests were "dated" as of January 1, 1963, they were not notarized until December 18, 1963, and were not recorded until December 20, 1963, and petitioners do not claim that their conveyance should be taken into account in determining the allowability of their rental deduction before December 20, 1963. Thus, at best petitioners would be allowed to deduct 11/365 of the fair rental value (not the actual "rent" paid) of the property in 1963 if their position should be sustained. But we do not think it should be. In view of all the facts and circumstances, including the extensive administrative powers still retained by Sidney as trustee after December 20, 1963, the fact that he occupied the property without any written lease throughout 1963, and the fact that the rents actually paid were unreasonable in amount, we feel justified in concluding that petitioners' dominion and control over the trust property was not significantly diminished by the conveyance of their reversionary interests therein within the family group, and that they are not entitled to any deduction for rent under section 162(a) for the year 1963, or any portion thereof.

*Decision will be entered under Rule 50.*