HOBART A. LERNER, M.D., P.C., PETITIONER v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

HOBART A. LERNER AND ELINOR O. LERNER, PETITIONERS v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 4267–76, 4268–76.    Filed November 27, 1978.

*Sherman F. Levey*, for the petitioners.
*Louis J. Zeller, Jr.*, for the respondent.

DRENNEN, *Judge:* In these consolidated cases respondent determined deficiencies as follows:

| Docket No. | Petitioner | Year | Deficiency |
|---|---|---|---|
| 4267–76 | Hobart A. Lerner, M.D., P.C. | FYE Sept. 30, 1971 | $2,187.12 |
|  |  | FYE Sept. 30, 1972 | 2,211.51 |
| 4268–76 | Hobart A. Lerner and Elinor O. Lerner | 1970 | 8,171.60 |
|  |  | 1972 | 3,213.68 |

All of the issues raised by the notices of deficiency have been settled by the parties with the following exceptions:

(1) Whether rental payments made by a professional corporation to a "Clifford" trust established pursuant to sections 671–678, I.R.C. 1954,[1] for the use of equipment donated to the trust

_____

[1] All section references are to the Internal Revenue Code of 1954, as amended and in effect in the years in issue, unless otherwise specified.

by the corporate shareholder and for equipment acquired by the trustee are ordinary and necessary business expenses of the corporation;

(2) Whether the rental payments described above are taxable as ordinary income to the corporate shareholder instead of to the income beneficiaries of the trust.

### FINDINGS OF FACT

Most of the facts have been stipulated and are so found. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by reference.

During the taxable years 1970 through 1972, Hobart A. Lerner (hereinafter referred to as Dr. Lerner) and Elinor O. Lerner resided in Rochester, N. Y. They filed their returns for the taxable years 1970 through 1972 with the North-Atlantic Service Center, Andover, Mass.

Dr. Lerner is a licensed physician specializing in ophthalmology. From 1949 until October 1, 1970, he was self-employed as an ophthalmologist.

Hobart A. Lerner, M.D., P.C. (hereinafter referred to as the corporation), is a professional service corporation incorporated by Dr. Lerner under the laws of the State of New York on September 21, 1970. Dr. Lerner's capital contribution was $500 for which he received 100 of the 200 shares authorized to be issued by the corporation. He was the corporation's sole shareholder, director, and president during the taxable years at issue; Elinor O. Lerner was the corporation's secretary. The corporation is a separate taxable entity for Federal income tax purposes.

The corporation filed its returns for the fiscal years ending September 30, 1971 and 1972, with the North-Atlantic Service Center, Andover, Mass.

The corporation was empowered by its certificate of incorporation to purchase or lease any real or personal property reasonably required in the conduct of its professional business.

On October 1, 1970, the corporation commenced business. Dr. Lerner, Elinor O. Lerner, and others, including a licensed optometrist, became its employees. Dr. Lerner is the only physician employed by the corporation. All of the people who were employed by the corporation on October 1, 1970, had been previously employed by Dr. Lerner. The corporation charged

fees for the services rendered by its employees and reported them as taxable income on its tax returns.

On October 1, 1970, Dr. Lerner also executed a trust agreement for the benefit of his three minor children. The trust agreement had been drafted by Samuel Atlas, one of Dr. Lerner's attorneys. Atlas, who had known Dr. Lerner socially for many years, also was the trustee. The trust agreement provided in pertinent part:

1. The Grantor has simultaneously and with the execution of this agreement delivered and transferred to the Trustee all of the items of personal property set forth in Exhibit A attached hereto, which shall constitute the trust estate, subject to such items of personal property as in the discretion of the Grantor may from time to time be added to the trust estate, which the Trustee agrees to hold in trust subject to the following terms, conditions, and purposes.

*      *      *      *      *      *      *

3. The Trustee under this declaration of trust shall hold, manage, invest, and reinvest the trust property, shall mortgage, lease, sell or exchange item for item or item for like item of trust property, shall accumulate, take and hold items of property of income producing quality, unlike such items of property delivered by this agreement, and shall collect and receive the income therefrom and after deducting all necessary expenses, incident to the administration of this trust, shall distribute the entire net income to each of the beneficiaries or their designees, annually or more often in the discretion of the Trustee.

4. The trust provided herein shall terminate on November 12, 1980, or upon the earlier date of the death of the beneficiary of such trust. Upon the termination of such trust, or trusts, any accumulated and undistributed income together with the Corpus of the Trust shall be paid and distributed to Hobart A. Lerner, the Grantor, herein, or to his estate if he is not then alive.

5. In the administration of this trust or these trusts, the Trustee, shall have all of such powers as are exercised in a fiduciary capacity, and authorized under the Laws of the State of New York, and such powers shall be exercised primarily in the interest of the beneficiaries as follows:

A. To hold and to continue to hold as an investment, the property received hereunder, and any additional property which may be received, so long as he deems proper, and to invest and reinvest in any securities or property, whether or not income producing, deemed by him to be for the best interest of the trust and the beneficiaries hereunder, and not withstanding that the same may constitute lease hold, royalty interest, patents, and to rent or lease any property of the trust for such time and upon such terms and for such price or prices as in his discretion and judgment may seem just and proper and for the best interest of the trust and the beneficiaries, irrespective of any other provisions or of the termination of any one of the trusts. Also, to sell and convey any of the property of the trust or any interest therein, or to exchange the same for other property, for such price or prices and upon such terms as in his discretion and judgment may be deemed for the best interest of the trust and the beneficiaries hereunder * * * . [A]lso to make all repairs and improvements at any time deemed necessary and proper to and upon the property constituting a part of the trust, and to build, construct, and complete

any building or buildings upon such property which in his discretion and judgment may be deemed advisable and proper and for the best interests of the trust and the beneficiaries hereunder * * *

\* \* \* \* \* \* \*

6. Notwithstanding anything herein contained to the contrary, no powers enumerated herein or accorded to the Trustee generally pursuant to law shall be construed to enable the Grantor, herein or the Trustee, or any other person to purchase, exchange or otherwise deal with or dispose of all or any part of the Corpus or income of the trust for less than an adequate consideration in money or money's worth, or to enable the Grantor to borrow all or any part of the Corpus or income of the trust, directly or indirectly, without adequate interest and or securities. No person other than the Trustee, shall have or exercise the power * * * of the trust, either by directing investments or reinvestments or by vetoing proposed investments or reinvestments, or to reacquire or exchange any property of the trust or trusts by substituting other property of any equivalent value. * * *

\* \* \* \* \* \* \*

9. The trusts created herein shall be irrevocable and the Grantor hereby expressly weighs [sic] all rights and powers, whether alone or in conjunction with others, and regardless of where or from what source he may heretofore or hereafter acquire such rights or powers to alter, amend, revoke, or terminate the trust, or any of the terms of this agreement in whole or part. The Grantor hereby declares that his purpose in establishing the trust is to provide his children with a regular income, and by this instrument the Grantor relinquishes absolutely and forever all his possessions or enjoyment of, or right to the income from, the trust property, and all his rights and power whether alone or in conjunction with others to designate the person who shall possess or enjoy the trust property or the income therefrom.[2]

The property which Dr. Lerner conveyed to the trustee as the trust corpus consisted of the furniture, furnishings, medical equipment, office supplies, and items of decoration previously used by Dr. Lerner in his office for the practice of ophthalmology.

Also, on October 1, 1970, Dr. Lerner, as president of the corporation, and Samuel Atlas, as trustee for the trust, executed a lease whereby the property constituting the trust corpus was leased to the corporation for a term of 10 years and 1 month. Pursuant to the lease, the corporation agreed to pay the trustee $650 per month as rent. The lease also provided:

From time to time, at the request of the Lessee in writing, the Lessor may at his option add to the equipment herein leased, and upon delivery to the Lessee of any and all additional equipment, the monthly rental herein shall be

---

[2]Although we have not set forth all the trust provisions, both parties agree that the trust is a "Clifford" trust. Respondent does not contend that the trust provisions fail to satisfy secs. 671–678.

increased commencing with the first of the month next following the date of delivery by an amount to be agreed upon by the parties herein, which agreement shall be reduced in writing as a memorandum to be appended hereto and made a part hereof.

As the monthly rental payments were received from the corporation, the trustee placed them in a savings account maintained in his name as trustee for the Lerner children. The rental payments and interest on the savings account were the trust's sole source of income.

From time to time during the taxable years at issue, Dr. Lerner requested the trustee to purchase various items of medical equipment and lease them to the corporation. Some of the items were too expensive and the trustee refused to make the purchases. However, on other occasions the trustee did make acquisitions and leased them to the corporation. The funds used to make the purchases were the amounts deposited in the savings account.

The purchases made by the trustee include wall-to-wall carpeting and furniture for the corporation's offices in early 1971. The total expense was $2,463.81 and was paid by the trustee in installments of $546.96 on March 30, 1971, $1,500 on May 20, 1971, and $930.95 on June 9, 1971.

On February 1, 1971, the original lease was modified by the parties to increase the monthly rental to $750 per month in anticipation of the above purchases.

During the period August 21, 1972, through August 8, 1973, the trust bought additional ophthalmological equipment which was included in the lease to the corporation. This equipment cost a total of $2,649.03.[3] Adjustments were made in the rent paid by the corporation to cover this equipment.

All of the equipment leased by the corporation was necessary for the corporation's operations. The reasonableness of the rentals for the taxable years at issue is conceded by respondent.

Dr. Lerner also requested on several occasions that the trustee loan him money from the trust funds at more favorable rates than he could obtain elsewhere. The trustee refused to do this.

---

[3]There is some question whether the trust paid the equipment supplier $2,649.03 or $2,665.96, the amount shown on the supplier's bill introduced in evidence. Since the cost of three pieces of equipment itemized on the bill totaled exactly $2,649.03, which is the amount the trustee testified he paid, and the trustee also testified that the corporation and not the trust paid for supplies and minor repairs, we have adopted the $2,649.03 figure.

The trustee also refused to borrow money to purchase equipment that was too expensive to be acquired from the trust funds. And the trustee refused to acquire certain stock in which Lerner was interested because he, the trustee, did not believe it would be a good investment.

The trustee did maintain insurance policies on the items leased by the corporation. And he paid one repair bill in 1973.

Pursuant to the lease and subsequent agreement, the corporation paid $8,600 to the trust during the corporation's fiscal year ending September 30, 1971, and $9,000 during its fiscal year ending September 30, 1972. The corporation claimed a deduction on its fiscal year 1971 and 1972 tax returns for these amounts. These deductions were disallowed to the corporation on the ground that the expenditures were not ordinary and necessary business expenses of the corporation.

The corporation also paid $650 to the trust as rent during the calendar year 1970. This amount, plus $9,000 paid by the corporation to the trust as rent during the calendar year 1972, were determined in the notice of deficiency[4] in docket No. 4268–76 to be taxable income to Dr. Lerner and Elinor Lerner on the ground that the transfer to the trusts of the equipment leased by the corporation is not recognized for purposes of the Federal income tax.

OPINION

The basic facts in this case are relatively simple and undisputed. In 1970, Dr. Lerner, who until that time had been a self-employed ophthalmologist, incorporated his practice into a professional service corporation, Hobart A. Lerner, M.D., P.C., which was formed for the purpose of engaging in the practice of ophthalmology. Dr. Lerner acquired all of the issued stock of the corporation for $500 cash; he did not transfer the furnishings and equipment he used in his practice to the corporation. Instead, Dr. Lerner established a trust, with his attorney as trustee, to which he transferred his medical furnishings and equipment. The net income of the trust was to be distributed to his children at least annually. The trust was to terminate in 10 years and approximately 1 month, at which time the corpus and any accumulated income of the trust was to revert to Dr. Lerner. The trustee, in turn, leased the medical furnishings and equipment to the corporation at a fair and reasonable rental for

[4]No deficiency was determined for the year 1971 in the notice of deficiency issued to the Lerners.

a period coextensive with the life of the trust. The corporation paid the rent to the trustee, who either distributed it to the children or invested some portion thereof in additional medical equipment which was included in the lease for additional and reasonable rental. Dr. Lerner became an employee of the corporation and the corporation charged and received the usual fees for his services and those of certain other employees.

Respondent, in a rather scattergun approach, disallowed the rental as a deduction to the corporation and taxed such rental, which had been paid to the trust, as income to Dr. Lerner, presumably as dividends from the corporation. It is not entirely clear whether respondent determined that the rent was taxable to Dr. Lerner as a dividend received directly from the corporation or as the owner for tax purposes of the trust and taxable on the income thereof. One thing is clear—respondent recognized the corporation as a separate taxable entity, taxing to it the income from the practice of ophthalmology, but disallowing the rental deductions, thus resulting in the deficiency determined to be due from the corporation.

We turn first to the deductibility of the rent, and we find no valid reason to deny it to the corporation.[5] The equipment and furnishings covered by the lease were used by the corporation in its business and were required for the production of the income on which it is being taxed. Respondent does not question the reasonableness of the rent and indeed the evidence would not support him if he did. Therefore, the rental was an ordinary and necessary expense of the corporation's business.

Respondent makes a half-hearted attempt to support his disallowance of the rental deduction by arguing that the corporation should be ignored and the transaction should be considered the same as a sale and leaseback between a grantor and his family trust, citing several cases in which the property was leased to partnerships in which the grantor or related individuals were partners. See *Hall v. United States*, 208 F.

---

[5]Sec. 162(a)(3) provides:

(a)  * * * There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

*       *       *       *       *       *       *

(3) rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity.

Supp. 584 (N.D.N.Y. 1962); *Miles v. Commissioner*, 41 T.C. 165 (1963). Such cases are inapposite because, if for no other reason, partnerships are not taxable entities whereas the corporation here involved is recognized and taxed as such.

Respondent also relies on two Fifth Circuit cases, *Van Zandt v. Commissioner*, 341 F.2d 440 (5th Cir. 1965), affg. 40 T.C. 824 (1963), cert. denied 382 U.S. 814 (1965), and *Mathews v. Commissioner*, 520 F.2d 323 (5th Cir. 1975), revg. 61 T.C. 12 (1973), cert. denied 424 U.S. 967 (1976), which denied rental deductions in typical sale-leaseback transactions directly between the grantor and the trustee. Respondent argues further that under the rule of *Golsen v. Commissioner*, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971), cert. denied 404 U.S. 940 (1971), we must follow those two decisions of the Fifth Circuit because the Court of Appeals for the Second Circuit, to which an appeal of this case would lie, would follow the reasoning of the Fifth Circuit. Respondent discusses several Second Circuit cases to support his argument. We will discuss the merits of the Fifth Circuit's approach in the *Van Zandt* and *Mathews* cases later, but we say without any hesitation that our *Golsen* rule does not require us to follow those cases. The *Golsen* rule is a rule of judicial administration whereunder, to avoid unnecessary litigation, the Tax Court will "follow a Court of Appeals decision which is squarely in point where appeal from one decision lies to that Court of Appeals and to that Court alone." The *Golsen* rule would not be stretched so far as to require us to follow the Fifth Circuit in this case even if there were reason to believe that the Second Circuit would follow the Fifth Circuit. Only if the Second Circuit had itself decided a case "squarely in point" with this case would we feel constrained by the *Golsen* rule to follow that case. We do not find the Second Circuit cases cited by respondent to be either "squarely in point" or apposite. *White v. Fitzpatrick*, 193 F.2d 398 (2d Cir. 1951), cert. denied 343 U.S. 928 (1952), involved a gift-sale-leaseback between a husband and wife. In *Johnson v. Commissioner*, 86 F.2d 710 (2d Cir. 1936), affg. 33 B.T.A. 1003 (1936), the husband funneled funds through his wife into a trust and then immediately borrowed the funds from the trust and deducted interest paid to the trust. The court held that the payments were not interest because the transfer of funds to the wife was not a

completed gift. Thus, respondent's reliance on the *Golsen* rule is misplaced.

Respondent does not really argue that the rental payments here involved do not qualify as rent under section 162(a)(3) because it was paid for property which the taxpayer has taken or is taking title to, or in which he has an *equity*. That argument is not applicable here because the corporation, rather than the grantor, is paying the rent and the corporation could not conceivably have any title or "equity" in the leased property. In any event, we held in *Mathews v. Commissioner*, 61 T.C. 12, 23 (1973), "that the property in which the taxpayer should have no equity does not include a reversionary interest, not derived from the lease or from the lessor, which is scheduled to become possessory after the expiration of a lessor's term of years."[6]

We conclude that the corporate petitioner is entitled to deduct the rent it paid for use of the medical equipment and furnishings.

The second issue is whether the rental paid by the corporation to the trust is taxable income to the beneficiaries of the trust or to the Lerners. The rationale for taxing the income to the Lerners set forth in the notice of deficiency and in respondent's opening statement assumes that the gift and lease are invalid for Federal income tax purposes.

This is not a typical sale-leaseback situation because the gifted property was leased to the corporation, a separate taxpayer, rather than the grantor. In the notices of deficiency, respondent's approach seems to be that the gift to the trust will not be recognized and that the equipment and furnishings were owned by Dr. Lerner and leased to the corporation. The rent paid by the corporation to the trust was determined to be "taxable income" to the Lerners. On brief respondent argues that—

Since there was no business purpose for the transactions * * * [the creation of the trust, the transfer of property to it, and the lease of the property by the trust to the corporation], the transfers must be disregarded for tax purposes. Therefore, the monthly rental payments are nondeductible and may be included in Dr. Lerner's income. [Respondent's brief, p. 19.]

Respondent allowed the Lerners depreciation on the medical

---

[6]Neither party suggests that there might be a distinction between the rent for the property originally transferred to the trust and the rent for the property subsequently acquired by the trust and leased to the corporation, so we will not consider the possibility.

equipment leased to the corporation since Dr. Lerner was determined to be the owner of the equipment.

It is rather difficult to follow respondent's reasoning. Respondent recognizes the corporation as the entity that is taxable on the income from the practice of ophthalmology and claims that Dr. Lerner was the owner of the equipment used therein. But he advances no valid argument why the corporation should be entitled to use the equipment rent free. The rent was reasonable and, as we stated above, was an ordinary and necessary business expense of the corporation, whether it was paid to the trust or to Dr. Lerner. Respondent's reasoning must assume that there was no sale or gift of the medical equipment to anyone and the trust should be ignored. For reasons hereinafter stated, we disagree.

By enacting section 671 of the 1954 Code, Congress certainly recognized that usually a grantor of a family trust will not be treated as the owner of the trust for tax purposes solely on the grounds of his dominion and control of the trust unless he is treated as owner for one of the reasons specified in sections 673–677.[7] Respondent does not point to any of those reasons for treating Dr. Lerner as owner of the trust and seems to recognize the trust as a "Clifford Trust." However, it is clear from S. Rept. 1622, 83d Cong., 2d Sess. 365 (1954), that the provision of section 671 relative to dominion and control does not affect the principles governing the taxability of income to a grantor of a trust other than by reason of his dominion and control over the trust, i.e., a transfer of future earnings of the grantor, etc. It is also clear that subpart E (secs. 671–679) has no application in determining the right of a grantor to deductions for payments to a trust under a transfer and leaseback arrangement. See also sec. 1.671–1(c), Income Tax Regs. Thus, while this is not a typical sale and leaseback arrangement, and we are more concerned at this point with the taxability of the income produced by, rather than the deductibility of, the rent, we believe we should examine the arrangement in the light of case law to determine whether there is any reason, other than dominion and control, to tax the

[7]Generally speaking, secs. 673–677 treat the grantor as owner if he has a reversionary interest that will take effect within 10 years (sec. 673), if the beneficial enjoyment of the corpus or income of the trust is subject to a power of disposition by the grantor alone (sec. 674), if the grantor has the power to deal with the trust property other than at arm's length (sec. 675), if the grantor has power to revest the corpus in himself (sec. 676), and if the grantor may distribute or accumulate income of the trust for himself or his spouse or use it to pay premiums on life insurance on his life (sec. 677).

income of the trust to the Lerners rather than the beneficiaries of the trust.

In determining the tax consequence of a gift-leaseback, two lines of thought have developed over the years. Respondent argues that the overall business-purpose test developed by the Court of Appeals for the Fifth Circuit and set forth in *Mathews v. Commissioner*, 520 F.2d 323 (5th Cir. 1975), revg. 61 T.C. 12 (1973), cert. denied 424 U.S. 967 (1976), should apply. On the other hand, petitioners argue that the criteria approach set forth in the decisions of this Court in *Mathews v. Commissioner*, 61 T.C. 12 (1973), and *Serbousek v. Commissioner*, T.C. Memo. 1977–105, should be applied.[8] We agree with petitioners that the approach used in our *Mathews* and other more recent opinions is the appropriate approach in this case rather than the overall business-purpose test utilized by the Fifth Circuit in *Mathews*.

In *Van Zandt v. Commissioner*, 40 T.C. 824 (1963), affd. 341 F.2d 440, 443 (5th Cir. 1965), cert. denied 382 U.S. 814 (1965), this Court held that a physician who transferred a building and equipment he used in his medical practice to trusts created for the benefit of his children, naming himself as trustee, and immediately leased the building and equipment back from the trust for use in his medical practice could not deduct the rent paid by the physician to the trusts because it would not have been necessary for him to pay the rent had he not transferred the property to the trusts. There the taxpayer, as trustee, retained complete control of the property and continued to use it in his business. The Court of Appeals for the Fifth Circuit affirmed our decision emphasizing, however, that while taxpayers have every right to avail themselves of all provisions of the law to minimize their taxes, the obligation of the taxpayer to pay rent arose not out of business necessity nor for any business purpose but solely for the purpose of permitting a division of taxpayer's income tax. The appellate court recognized "that from the standpoint of taxability of income of the trust, not deductions which a payor of that 'income' may take, this was a perfectly valid trust. It met not only the minimum but all the statutory tests so that its income will be taxed to it, not the settlors."

---

[8]See also *Quinlivan v. Commissioner*, T.C. Memo. 1978–70, in which the criteria approach of our case, *Mathews v. Commissioner*, 61 T.C. 12 (1973), was found to be the appropriate test for deductibility of rental payments by the grantor in a gift and leaseback arrangement.

In *Mathews v. Commissioner, supra,* under somewhat similar circumstances, we held the rents paid were deductible by the settlors. We distinguished *Van Zandt* for the reasons that there the grantor was himself the trustee and thus failed to relinquish effective control of the property while in *Mathews,* as here, there was an independent trustee. In our opinion, we also listed certain requirements that have to be met to permit the grantor to deduct rent paid to the trustee in the typical two-party gift-leaseback transaction. Those requirements were:

(1) The grantor must not retain substantially the same control over the property that he had before he made the gift.

(2) The leaseback should normally be in writing and must require payment of a reasonable rental.

(3) The leaseback (as distinguished from the gift) must have a bona fide business purpose.

(4) The grantor must not possess a disqualifying "equity" in the property within the meaning of section 162(a)(3).

In reversing us in *Mathews,* the Fifth Circuit looked to the substance and concluded that, because of the grantor's effective control of the property after the gift and leaseback, there was no business purpose for the arrangement and the trust was treated as an economic nullity.

Although we followed the Fifth Circuit approach in *Butler v. Commissioner,* 65 T.C. 327 (1975), this was because it was mandated by *Golsen v. Commissioner, supra.* In subsequent cases, see *Serbousek v. Commissioner, supra,* and *Quinlivan v. Commissioner,* T.C. Memo. 1978-70, we have followed the approach we took in *Mathews* requiring a business purpose for the lease but not for the gift.

We do not believe that an arrangement that is bona fide and arm's length in all respects but which results in splitting family income must be disregarded for tax purposes for the latter reason alone. The so-called Clifford provisions in the Code recognize that valid trusts can be created which result in splitting the family income and minimizing taxes if the grantor does not retain control of the property for his own benefit. The Fifth Circuit recognized this in its opinion in *Van Zandt v. Commissioner, supra.* There need be no business purpose for a father to transfer income-producing property to a trust for his children and have them taxed on the income produced. There is a

difference, of course, if the father attempts to assign to the trust his future earnings and have the trust pay tax thereon. But in the case before us Dr. Lerner, having decided to incorporate his medical practice, could either have transferred his medical furnishings and equipment to the corporation, he could have retained ownership of it and rented it to the corporation himself, or he could do as he did—transfer the furnishings and equipment to a trust created for the benefit of his children and have the trust lease it to the corporation. The fact that the latter course of action would result in less taxes does not justify taxing the income of the trust to Dr. Lerner as long as he does not use that income for his own purposes or violate any of the restrictions contained in sections 673–677 of the Code. We believe respondent erred in not recognizing the trust as the true recipient and owner of the rental income and attempting to tax that income to the Lerners.

We have already concluded for other reasons that the corporation is entitled to deduct the rentals paid. For the sake of completeness, however, we will briefly examine this transaction in the light of the requirements set forth in our *Mathews* opinion, to determine whether the rental would have been deductible by the Lerners had they, instead of the corporation, leased the property back from the trust.

We are readily convinced that requirements 2, 3, and 4 as set out above were met. The lease was in writing and the rent was reasonable. The leaseback had a bona fide business purpose—the equipment was required to conduct the business. And the grantor did not possess a disqualifying "equity" in the property within the meaning of section 162(a)(3). We have more trouble in deciding whether the trustee in fact acted independently of Dr. Lerner—the first requirement in *Mathews*. However, this is a question of fact and, on balance, we conclude that he did.

Under the terms of the trust, the trustee was given full and sole power to deal with the trust corpus and he was expected to use it in such a way as to produce income for the beneficiaries. The evidence indicates that he had several appraisals made to determine the fair rental for the property. The lease was executed by the trustee and the corporation, and the rental was paid to the trustee when due. Under the terms of the lease it was anticipated that additional equipment would be purchased by the trust and added to the leased property. When this was done, the terms of the lease were reviewed and the rent was increased

to cover the additional equipment. The fact that the trustee relied on the advice of Dr. Lerner in purchasing additional equipment has no significance—he could not be expected to know what additional medical equipment was needed. And the evidence does show that at times the trustee resisted the efforts of Dr. Lerner to buy equipment that was too expensive and to borrow funds from the trust. The fact that the trustee was a friend of Dr. Lerner does not mean that he was not independent—the trustee was an attorney who knew that his obligations were to the beneficiaries of the trust. And we consider as minor the fact that the trustee insured the trust corpus which the corporation was obligated to keep in good repair.

The fact that causes us some trouble is that the trustee used trust income to purchase additional equipment which would revert to Dr. Lerner on termination of the trust. However, under the terms of the trust, the trustee was expected to utilize the corpus of the trust to produce income and was to distribute *net* income to the beneficiaries at least annually. The cash used to buy the equipment may well have represented a reserve for depreciation. Furthermore, this question was first raised by the Court during the course of the trial when the parties had no opportunity to produce evidence with respect thereto. Therefore, we will give it no further consideration.

We conclude that even if the corporation be considered to be the alter ego of Dr. Lerner, the rent paid would have been deductible by the lessee.

Because of concessions made by the parties,

*Decisions will be entered under Rule 155.*