GEORGE B. ROSENFELD and HARRIET ROSENFELD, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Rosenfeld v. Commissioner
Docket No. 789-79.
United States Tax Court
T.C. Memo 1982-263; 1982 Tax Ct. Memo LEXIS 484; 43 T.C.M. (CCH) 1353; T.C.M. (RIA) 82263; May 12, 1982. *484 P transferred his medical property to Clifford trusts and leased such property back from the trusts. The term of the lease corresponded to the term of the trusts, and before the transfer in trust, P and the trustees understood that the property would be leased back to him. Subsequently, P transferred to his wife his reversionary interest in such trusts. Held, under the circumstances, the criteria for allowing a deduction for the payments of rent made by P have been satisfied. May v. Commissioner,76 T.C. 7 (1981). John P. Dee, for the petitioners. Jerome F. Warner, for the respondent. SIMPSON
MEMORANDUM FINDINGS OF FACT AND OPINION SIMPSON, Judge:* *485 The Commissioner determined deficiencies in the petitioners' Federal income taxes of $ 5,770.50 for 1974 and $ 4,916.65 for 1975. After concessions by the petitioners, the sole issue for decision is whether the amounts paid as rent by Dr. Rosenfeld during 1974 and 1975 to trusts created by him for the benefit of his children constituted ordinary and necessary business expenses under section 162(a) of the Internal Revenue Code of 1954. [1]
FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. The petitioners, George B. and Harriet Rosenfeld, husband and wife, resided in Eggertsville, N.Y., at the time they filed their petition in this case. They timely filed joint Federal income tax returns for 1974 and 1975 with the Internal Revenue Service Center, Andover, Mass.
George B. Rosenfeld is a doctor of medicine and is licensed to practice such profession in New York. In his medical practice, he specialized in pediatrics and allergies. In April 1963, Dr. Rosenfeld purchased a parcel of land at 4415 Union Road, Cheektowaga, N.Y., for $ 8,500. During 1963, he had constructed on such land a single-story building, which was thereafter occupied exclusively by him for the conduct of his medical practice. Previously, Dr. Rosenfeld had practiced medicine in the same general geographic area. The construction of such building was financed through a mortgage on the land and building *486 (the medical property) in the amount of $ 40,000, payable over a 20-year term. Dr. Rosenfeld was personally liable under such mortgage, and the payment thereunder is $ 286.58 per month. While he owned the property, he also paid all expenses related to such building, including taxes, maintenance, repairs, and mortgage amortization. Sometime in 1969, Dr. Rosenfeld consulted his attorney, Ira L. Powsner, and his accountant, Samuel Goldman, concerning the possibility of making gifts to his children. Mr. Powsner and Mr. Goldman recommended that Dr. Rosenfeld establish a Clifford trust [2] and that he transfer his medical property to such trust. In June 1969, Mr. Powsner, on the recommendation of Mr. Goldman, retained Grant Appraisal and Research Corporation to appraise the medical property. Such appraisal accurately established the fair rental value of such property, as of June 23, 1969, to be a gross rental of $ 14,000 per year *487 and a net rental of $ 9,500 per year. The rear portion of the building, approximately one-third of the usable area, was unfinished and was used for storage. The appraisal determined that the highest and best use of the building was its then present use, as a medical office building, with the rear portion finished and occupied as a medical office. In 1969, the annual real estate taxes for the medical property were $ 1,510.40. Based on such appraisal, Mr. Powsner and Mr. Goldman consulted with Dr. Rosenfeld as to the rent that would be charged for the building. Prior to the establishment of the trust, it was understood by Dr. Rosenfeld, Mr. Powsner, and Mr. Goldman that the building would be transferred to a trust and that Dr. Rosenfeld would then lease back the building from the trust. On July 1, 1969, Dr. Rosenfeld, as grantor, entered into a trust agreement with Mr. Powsner and Mr. Goldman as trustees. Such agreement was drafted by Mr. Powsner.It established three separate irrevocable trusts for the benefit of Dr. Rosenfeld's three daughters, Barbara, then age 21, Judith, then age 19, and Laura, then age 14. The term of the trusts was for 10-1/2 years, and such trusts were *488 to terminate on January 2, 1980. At that time, the corpus was to revert to Dr. Rosenfeld. All income was to be accumulated during the term of the trusts and was to be payable to the beneficiaries upon the termination of the trusts. The corpus of the trusts consisted of Dr. Rosenfeld's medical property. Under the agreement, he agreed to remain personally liable for, and to make all payments on, the mortgage, and the trustees agreed to pay all real estate taxes and other incidental expenses of the trusts. On July 1, 1969, by warranty deed with lien covenant, Dr. Rosenfeld conveyed the medical property to Mr. Powsner and Mr. Goldman as trustees under such agreement. Both the trust agreement and the warranty deed were filed with the Clerk's office, Erie County, N.Y. [3] The petitioners filed Federal gift tax returns for 1969 on which they reported the transfer of the medical property to the trusts. On July 1, 1969, Dr. Rosenfeld also entered into a lease agreement with Mr. Powsner and Mr. Goldman, as trustees, for the lease of the medical property. The term of such lease was for 10-1/2 years, commencing of July 1, 1969, and *489 terminating on January 2, 1980. The annual rental under the lease was $ 14,000, payable in monthly installments in advance on the first day of each month. The lease required that Dr. Rosenfeld be responsible for the property and make, at his own expense, all repairs, except structural repairs. Also, he was required to pay all utility expenses and to carry adequate public liability insurance. In addition, he was granted the right to construct any additions to the existing building and to finance such construction, provided that he would be personally liable for any construction and related indebtedness and that he would pay any increased taxes. Since July 1, 1969, Dr. Rosenfeld made the mortgage payments, and the trusts paid the taxes on the medical property. Under the trust agreement, the trustees were given the power to "hold, manage and control the property comprising the Trust Estates" and the power to sell, exchange, or otherwise dispose of realty and personalty. However, because the corpus of the trusts, the medical property, was leased for the entire term of the trusts, their practical duties consisted of collecting the rental payments, investing such funds, paying the *490 taxes on the property, [4] and filing fiduciary income tax returns for the trusts. The trustees did not attempt to find another lessee for the building, since Mr. Goldman felt that the rent was fair, the building was leased for the entire term of the trusts, and he did not want to disturb Dr. Rosenfeld's practice. Also, there was no additional space that could be rented; the unfinished portion of the building was not made into a medical office since Dr. Rosenfeld decided that the cost of doing so would not be justified by the rents that could be obtained. On July 2, 1973, Dr. Rosenfeld transferred, by deed of gift, his reversionary interest in the trusts to his wife. Such transfer was suggested by Mr. Goldman. Such deed of gift was duly recorded in the Erie County clerk's office, and in November 1973, Dr. Rosenfeld filed a Federal gift tax return on which he reported such transfer. Mr. Powsner died in 1975. On December 17, 1975, the trust agreement of 1969 was amended with the consent of all interested parties. Such amendment provided *491 that Robert O. Swados, an attorney, Mr. Goldman, and Barbara Rosenfeld were to be trustees. The trustees were authorized to act by majority vote, if the majority included Barbara Rosenfeld. At the time of the amendment, she resided in Chicago, Ill. Such amendment also provided that the termination of the trust was extended from January 2, 1980, to June 2, 1985, and that upon such termination, the corpus of the trusts was to be "conveyed and transferred" to Dr. Rosenfeld's wife, if living, or otherwise to her estate. It was further provided that in no event was the corpus to revert or pass to Dr. Rosenfeld, and he specifically released and disclaimed any interest in such corpus. In addition, the trustees were granted a discretionary power to distribute the current or accumulated income of the trusts to, or for the benefit of, the beneficiaries. On December 24, 1975, Dr. Rosenfeld entered into a new lease agreement with the trustees for the lease of the medical property. The term of such lease was for 1 year, from January 1, 1976, through December 31, 1976, at an annual rental of $ 15,000 to be paid in monthly installments on the first day of each month. Such lease granted Dr. *492 Rosenfeld an option to renew for an additional 1-year term at the same rental. In other respects, the provisions of such lease were substantially identical to the 1969 lease. Mr. Goldman did not discuss such lease with Barbara Rosenfeld. To the time of trial, Dr. Rosenfeld continued to use and occupy the entire building.
On their 1974 Federal income tax return, the petitioners claimed a deduction for rent paid to the trusts of $ 14,034.24. Such rental payments were made by check to the trustees. On their fiduciary income tax returns for 1974, the trusts reported rental income of $ 14,000.00 and claimed deductions for real estate taxes of $ 2,313.59 and depreciation on the building of $ 1,692.25. On their 1975 Federal income tax return, the petitioners claimed a deduction for rent paid to the trusts of $ 14,000.00. The rental payments for 1975 were made by Dr. Rosenfeld's payment of real estate taxes on the medical property of $ 2,442.00, by his transfer to the trusts of securities with a fair market value of $ 11,158.87, [5] and by his cash payment of $ 399.13. On their fiduciary income tax returns for 1975, the trusts reported rental income of $ 14,000.00 and claimed deductions *493 for real estate taxes of $ 2,442.00 and depreciation on the building of $ 1,692.25. In his notice of deficiency, the Commissioner disallowed the deductions claimed by the petitioners for rental payments to the trusts, since he determined that such payments were not ordinary and necessary business expenses. In lieu of such deductions, the Commissioner allowed the petitioners deductions for the taxes and depreciation attributable to the medical property. OPINION The only issue for decision is whether the payments made by Dr. Rosenfeld as rent in 1974 and 1975 were ordinary and necessary business expenses under section 162(a). That section provides, in relevant part: There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including-- (3) rentals or other payments *494 required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity. In Mathews v. Commissioner,61 T.C. 12 (1973), revd. 520 F. 2d 323 (5th Cir. 1975), this Court drew upon the numerous decisions dealing with whether the grantor of a trust may deduct payments made by him to such trust as rent, and we set forth the following criteria which must be met for a deduction to be allowed: 1. The grantor must not retain substantially the same control over the property that he had before he made the gift. 2. The leaseback should normally be in writing and must require payment of reasonable rent. 3. The leaseback (as distinguished from the gift) must have a bona fide business purpose. 4. The grantor must not possess a disqualifying "equity" in the property within the meaning of section 162(a) (3). See May v. Commissioner,76 T.C. 7, 13 (1981). Once again, the Commissioner urges us to reverse our decision in Mathews and to adopt the Fifth Circuit's view that a gift-leaseback is in substance a single transaction and that, unless there is a business *495 purpose for the entire arrangement, the transaction should not be recognized. Since Mathews, we have continued to rely on the criteria set forth in that case in deciding cases involving gift-leaseback transactions. See May v. Commissioner,supra;Lerner v. Commissioner,71 T.C. 290 (1978); Quinlivan v. Commissioner,T.C. Memo. 1978-70, affd. 599 F. 2d 269 (8th Cir. 1979); Serbousek v. Commissioner,T.C. Memo. 1977-105. In each of those cases, we have considered and rejected the Commissioner's argument that we abandon our position in Mathews, and we see no reason to alter our position at this time. See May v. Commissioner,supra at 13 n. 3. In the alternative, the Commissioner argues that the petitioner's arrangement fails to satisfy the Mathews criteria. However, during the years in issue, Dr. Rosenfeld did not have an equity in the medical property in the sense of a property right "which traditionally would have been enforceable by means of an equitable remedy." Oakes v. Commissioner,44 T.C. 524, 531 (1965). Under the trust agreement, the sole equitable owners of the property were the petitioners' three daughters. The fact that Dr. Rosenfeld originally retained a reversion *496 in the property, which right was not derived from the lessor or under the lease, did not result in his having a disqualifying equity interest in the property. Mathews v. Commissioner,61 T.C. at 23. Moreover, in 1973, Dr. Rosenfeld transferred such reversion to his wife. Thus, during the years in issue, Dr. Rosenfeld did not even possess a reversionary interest in the medical property. See Oakes v. Commissioner,supra at 530-531. [6]
Also, Dr. Rosenfeld required the property for his medical practice. After he transferred the property to the trusts, his use of the property was conditioned upon the payment of rent. Under such circumstances, the leaseback had a bona fide business purpose. May v. Commissioner,supra at 13-14; Lerner v. Commissioner,supra at 302; Mathews v. Commissioner,61 T.C. at 19; Oakes v. Commissioner,supra at 532. Thus, it is clear that the petitioners satisfied the third and fourth criteria under Mathews.
The second criterion under Mathews is that the leaseback should normally be in writing and must require payments of a reasonable rent. Here, the leaseback was in writing. As to the reasonableness of the *497 rent, the Commissioner did not at the trial or in his opening brief question the reasonableness of the rent paid by Dr. Rosenfeld in 1974 and 1975. In their opening brief, the petitioners requested a finding of fact that "The rental of $ 14,000 per year as fixed by the lease is a fair and reasonable rental imposed upon the use and occupany of" the medical property, and in his reply brief, the Commissioner did not object to such requested finding. Under such circumstances, we conclude that the Commissioner has conceded the reasonableness of the rental paid by Dr. Rosenfeld in 1974 and 1975. [7] *498 May v. Commissioner,supra at 14. The first criterion under Mathews is that the grantor must not retain substantially the same control over the property as he had before he made the gift. The Commissioner argues that because the lease was pre-arranged and was for the entire term of the trusts, the trustees were not independent and that Dr. Rosenfeld retained the same control over the property as he had before he transferred it to the trusts. In support of such argument, the Commissioner relies on Mathews, where we distinguished Van Zandt v. Commissioner,40 T.C. 824 (1963), affd. 341 F. 2d 440 (5th Cir. 1965), on such grounds. See Mathews v. Commissioner,61 T.C. at 19. However, in light of our more recent decision in May v. Commissioner,supra, the presence of such facts does not warrant the conclusion that the first criterion of Mathews was not satisfied. *499 In May, it was understood that Dr. May's medical building would be leased back to Dr. May following the transfer of such building to the trusts established by him. 76 T.C. at 11. The fact that the leaseback was pre-arranged did not prevent Dr. May from qualifying under the Mathews criteria. See also Lerner v. Commissioner,71 T.C. at 293. Although some of the cases have not found as a fact that the leaseback was pre-arranged, it is generally likely that a taxpayer would not transfer to a trust property which was an integral part of his business without at least a tacit understanding that such property would be leased back to him. Thus, the presence of a pre-arranged leaseback does not result in the grantor-lessee failing the first criterion under Mathews.May v. Commissioner,supra.
While, in the other cases, it is true that generally the leases have been for less than the entire term of the trust, we find a requirement that the trustee have the ability to renegotiate the lease to be the exaltation of form over substance; again, it is very unlikely that the trustee would evict the grantor-lessee. Rather, the ability to renegotiate is more likely to serve as a means of increasing *500 the rental payments in subsequent years. Also, even if the lease is for the entire term of the trust, there is no reason why such lease could not be subsequently renegotiated to increase the rental, as occurred in this case. Although the trustees were Dr. Rosenfeld's lawyer and accountant, such fact does not cause them to lack independence. See Lerner v. Commissioner,supra;Mathews v. Commissioner,supra. Mr. Powsner, Mr. Swados, and Mr. Goldman were clearly aware of their fiduciary duties and, certainly when compared to the facts of May, took a much more active role in the administration of the trusts than did the nongrantor trustee in that case. Moreover, the rationale of May is that the presence of a reasonable rent causes less emphasis to be placed on the independence of the trustee. See May v. Commissioner,76 T.C. at 14-15. In summary, we find that the rent paid under the lease was reasonable, that the leaseback had a bona fide business purpose, that Dr. Rosenfeld did not possess a disqualifying equity interest in the property, and that his control over the property was not substantially the same control as possessed by him before the gift. Due to concessions by the petitioners *501 on other issues, Decision will be entered under Rule 155.
Footnotes
*. This case was tried before Judge Sheldon V. Ekman. Subsequently Judge Ekman died. By order of the Chief Judge dated March 19, 1982, this case was reassigned to Judge Charles R. Simpson↩ for disposition.
1. All statutory references are to the Internal Revenue Code of 1954 as in effect during the years in issue.↩
2. The term "Clifford trust" is commonly used to describe an irrevocable short-term (at least 10 years and one day) trust where the grantor retains a reversionary interest in the corpus of the trust. See Helvering v. Clifford,309 U.S. 331↩ (1940); secs. 671-677.
3. The Town of Cheektowaga is located in Erie County, N.Y.↩
4. In at least one year, Dr. Rosenfeld actually made escrow payments for the taxes, and the trustees credited his rental obligation with such payments.↩
5. There is some evidence that the securities were actually transferred in 1974. However, the parties have stipulated that they were transferred in 1975, and the Commissioner has not questioned that they constituted a partial payment of the 1975 rent. Accordingly, there is no issue before us concerning the year of such payment.↩
6. See also Serbousek v. Commissioner,T.C. Memo. 1977-105↩.
7. The evidence suggests that, in fact, there may have been some bases for questioning the reasonableness of the rent: Dr. Rosenfeld paid $ 14,000 a year, the amount that was determined to be a reasonable gross rent, but he also paid the expenses of maintaining the property except for the taxes. Also, since he was obligated to make the mortgage payments, there may be a question as to whether it was reasonable for him to pay a gross rental based on the entire value of the property. However, since the Commissioner has not raised these issues, it would be inappropriate for us to consider and decide them. See Estate of Gillespie v. Commissioner,75 T.C. 374, 381 (1980); Estate of Horvath v. Commissioner,59 T.C. 551, 555 (1973); Riss v. Commissioner,56 T.C. 388, 401 (1971), supp. opinion 57 T.C. 469 (1971), affd. on this issue 478 F. 2d 1160 (8th Cir. 1973); Theatre Concessions, Inc. v. Commissioner,29 T.C. 754, 760-761↩ (1958).