T.C. Memo. 2003-30

UNITED STATES TAX COURT

MICHAEL CHIN AND JULIE HEDRICH CHIN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 599-01.                    Filed February 6, 2003.

<u>Robert F. Klueger</u>, for petitioners.

<u>Michael W. Berwind</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GERBER, <u>Judge</u>:  Respondent determined deficiencies in petitioners' Federal income tax and penalties for the taxable years 1994 and 1997 as follows:

| Year | Deficiency | Penalty Sec. 6662(h) |
|------|-----------|-------------------|
| 1994 | $22,319 | $8,928 |
| 1997 | 22,318 | 8,927 |

All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

After concessions,[1] the sole issue for our consideration is whether petitioners have shown entitlement to a deduction for rent payments as ordinary and necessary business expenses under section 162(a).

## FINDINGS OF FACT[2]

Petitioners Michael Chin and Julie Hedrich Chin resided in Corona, California, at the time their petition was filed in this case. Michael Chin[3] (petitioner) graduated from medical school in 1984 and became licensed to practice medicine as both a physician and surgeon in California on December 16, 1985. Petitioner's primary medical practice specialty is general surgery, and his secondary practice specialty is vascular surgery. During the years at issue, petitioner leased or subleased two offices in Corona, California, and one office in

---

[1] In the statutory notice of deficiency, respondent determined accuracy-related penalties due to a gross valuation misstatement under sec. 6662(h). Respondent conceded the sec. 6662(h) penalties in his posttrial brief.

[2] The parties' stipulations of facts are incorporated by this reference.

[3] Petitioner Julie Hedrich Chin is a party to this case by reason of the fact that she filed joint Federal income tax returns with Michael Chin for the years at issue.

Wildomar, California, to operate his medical practice.  All three offices were within Riverside County limits, and petitioner paid aggregate rent for the offices of $31,760 in 1994 and $24,039 in 1997.

At all pertinent times petitioner maintained appropriate State, county, and local licenses to conduct business at all of his office locations in Riverside County and maintained hospital privileges at several hospitals in Riverside County.  Petitioner also maintained both general business and surgical telephone listings in three local Riverside County telephone directories and was a member of the Riverside County Medical Association.

For the 1994 and 1997 tax years, petitioner reported on his Schedule C, Profit or Loss From Business, gross receipts of $1,056,961 and $1,253,902, respectively.  All of these gross receipts were derived from petitioner's medical practice at the three Riverside County offices.  Further, for 1994 and 1997, petitioner reported taxable income of $620,115 and $737,341, respectively, and was in the 39.6-percent tax rate bracket.

In November 1989, petitioner's mother, Chi Ying Chin, acquired a commercial building at 13732 Ventura Boulevard, Sherman Oaks, California (Sherman Oaks Property).  Sherman Oaks, California, is approximately 10 miles northwest of Los Angeles and approximately 70 miles west of Riverside County.

On November 18, 1991, the Skin Service Club, Inc. (Skin Service Club), was incorporated as a C corporation under California law.  Petitioner and his brother, David Sywehong Chin, each owned 50 percent of the Skin Service Club stock.  Two years later, on November 15, 1993, the Skin Service Club elected to be taxed as an S corporation.

The Skin Service Club conducted business at the Sherman Oaks Property in 1992, 1993, and 1994.  Petitioner, however, did not acquire, in his name, any City of Los Angeles permits or licenses needed to conduct business in the town of Sherman Oaks.  In addition, petitioner never maintained a medical or surgical listing in any Sherman Oaks telephone directory, and he was not a member of the Los Angeles County Medical Society.

For both years at issue, the Skin Service Club reported zero gross receipts.  Further, the Skin Service Club did not generate any revenue from the time of its conversion to an S corporation through December 30, 1996, when the company was dissolved. During its entire period of operation, the Skin Service Club did not claim any rent expense relating to the Sherman Oaks Property.

On November 13, 1991, petitioner executed a 10-year lease on suite B of the Sherman Oaks Property, with petitioner's mother as landlord.  Under the terms of the lease, petitioner made rent payments to his mother of $52,000 in 1994 and $48,000 in 1997. Petitioner deducted these amounts as business expenses on his

Schedule C attached to his Forms 1040, U.S. Individual Income Tax Return, for each tax year.  Notwithstanding petitioner's 1997 rent payments, the Sherman Oaks Property was vacant during this entire year.

Petitioner's mother reported the payments received from petitioner as rental income on her 1994 and 1997 tax returns.  In 1994, despite $52,000 in rent receipts from petitioner, petitioner's mother had zero taxable income after deductions.  In 1997, petitioner's mother had taxable income of $56,778 and was in the 28-percent tax rate bracket.

During 1994 and 1995, petitioner's brother filed three business name registrations in the State of California, each designating the Sherman Oaks Property as the place of business. One of the filings, that of Great Western Kingdom, specifically designated suite B of the Sherman Oaks Property as the company's place of business.  In 1994, petitioner paid his brother $36,000 in nonemployee compensation, which petitioner reported using a Form 1099-MISC, Miscellaneous Income, and petitioner's brother reported on his Schedule C as gross receipts from Great Western Kingdom.

### OPINION

The question we consider is whether petitioner is entitled to deduct the Sherman Oaks Property rent payments (rent payments) made to his mother as ordinary and necessary business expenses

under section 162.  Section 162(a) allows a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business".  Section 162(a)(3) specifically includes "rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity" as deductions that qualify as ordinary and necessary.

The question as to whether an expenditure satisfies the requirements of section 162 is one of fact.  Commissioner v. Heininger, 320 U.S. 467 (1943).  In addition, "intrafamily transactions resulting in the distribution of income within a family unit are subject to the closest scrutiny." Van Zandt v. Commissioner 40 T.C. 824, 830 (1963) (citing Commissioner v. Tower, 327 U.S. 280 (1946); Helvering v. Clifford, 309 U.S. 331 (1940)), affd. 341 F.2d 440 (5th Cir. 1965).

Petitioner maintains that the Sherman Oaks Property rent payments were made as part of an oral agreement between him and his brother when incorporating the Skin Service Club in 1991.  In return for the contribution of day-to-day management services to the corporation by petitioner's brother, petitioner would be solely obligated to make rent payments on the Sherman Oaks Property lease.  Petitioner further maintains that the agreement

called for petitioner's brother to perform cosmetology services and to refer his clients to petitioner for sclerotherapy treatment of varicose veins.

Petitioner argues that he conducted his medical practice at the Sherman Oaks Property as a part of the business activity of the Skin Service Club. Petitioner further argues that, despite the fact that the Skin Service Club is a corporation, petitioner's rent payments for the years at issue were deductible on petitioner's Schedule C as ordinary and necessary business expenses relating to petitioner's personal medical practice. On the other hand, respondent argues that petitioner was not involved in any business activity at the Sherman Oaks Property during the years at issue, and therefore petitioner's rent payments were not incurred to carry on a trade or business under section 162. Respondent further argues that the rent payments were in actuality a redistribution of income from petitioner, who was in the highest tax bracket, to his mother, who was in a lower tax bracket. We agree with respondent.

We note that a "deduction is a matter of legislative grace and that the burden of clearly showing the right to the claimed deduction is on the taxpayer."[4] INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); see also Rule 142(a). Therefore,

_____

[4] The examination commenced before July 22, 1998. Accordingly sec. 7491 burden of proof and production standards are not applicable. See sec. 7491.

petitioner must establish that his Sherman Oaks Property rent payments were incurred in carrying on his trade or business.

Petitioner has not shown that he ever conducted his medical practice at Sherman Oaks Property. The only evidence petitioner offered was his own self-serving testimony that he had an oral agreement with his brother and that he saw patients at Sherman Oaks Property in 1991 and 1992. As we do not need to accept self-serving testimony without corroborating evidence, this testimony, by itself, is not enough to establish that petitioner conducted business activity at the Sherman Oaks Property during 1994 and 1997. Niedringhaus v. Commissioner, 99 T.C. 202 (1992). Further, even if we accepted petitioner's testimony, it does not relate to business activity at the Sherman Oaks Property for the 1994 and 1997 tax years. Petitioner offers no evidence indicating that he conducted his medical practice at the Sherman Oaks Property in either 1994 or 1997.

Many facts, however, indicate an absence of business activity by petitioner at the Sherman Oaks Property during the years at issue. Petitioner did not take any of the customary steps of starting up a medical practice at Sherman Oaks Property that he had taken in Riverside County. Petitioner did not acquire business permits or licenses, did not maintain any type of local telephone listing, did not have any local hospital privileges, and was not a member of the Los Angeles County

Medical Society. Even if petitioner was to rely on his brother for patient referrals, these customary business steps were not taken to attract clients in addition to the referrals.

Most notably, petitioner fails to explain how he could have conducted his medical practice at the Sherman Oaks Property while failing to generate any revenue. In 1994, petitioner reported Schedule C gross receipts of $1,056,961. None of these gross receipts were shown to be derived from activity at the Sherman Oaks Property. Further, the Skin Service Club reported zero gross receipts on its S corporation tax return. If petitioner had conducted his medical practice at the Sherman Oaks Property at any time in 1994, such activity would have generated revenue reportable on either petitioner's Schedule C or the Skin Service Club's corporate return.

Respondent concedes that the Skin Service Club conducted some business activity at the Sherman Oaks Property during 1994. However, the business activity was minimal at best, with zero revenue and minimal expenses. There is no evidence indicating that petitioner was involved with the Skin Service Club's business activity during 1994.

In 1997, none of petitioner's $1,253,902 Schedule C gross receipts were derived from activity at the Sherman Oaks Property. Further, the Skin Service Club was dissolved before 1997, and the Sherman Oaks Property was completely vacant for the entire year.

Given these facts, no business activity was conducted by anyone at the Sherman Oaks Property in 1997.

Although there was little or no business activity during the years at issue, petitioner had entered into a lease for the property, paid rent, and had some type of informal understanding or arrangement with his brother relating to the Skin Service Club. These facts, at least in form, suggest the expectation of possible business activity. However, according to the record and in substance, petitioner's rent payments merely benefited petitioner's brother and mother. Petitioner's brother was provided with a place to operate various of his business ventures, and petitioner's mother received monthly income payments. In addition, petitioner has not shown any relationship between the rent payments and any income-producing activity of petitioner, including his medical practice. Although petitioner's rent payments reflect his generosity to his family, they fall short of the section 162 standard for deductibility.

Accordingly, we hold that petitioner did not conduct any business activity at the Sherman Oaks Property during 1994 or 1997. We further hold that petitioner's relationship to his brother and/or the Skin Service Club does not provide a basis for petitioner to claim a deduction for rental expenses on his personal Schedule C. Any business activity that did occur at the Sherman Oaks Property during the years at issue could only have

been that of one of the several ventures entered into by petitioner's brother.[5]  Petitioner's rent payments were personal expenditures unrelated to his medical practice and designed to support his brother's business interests while shifting income to his mother, who was in a lower tax bracket.

To the extent not herein discussed, we have considered all other arguments made by the parties and conclude that they are moot or without merit.

To reflect the foregoing and concessions of the parties,

<u>Decision will be entered</u>

<u>for respondent.</u>

---

[5] Petitioner did not argue that the rent payments were a type of investment or contribution of capital in the Skin Service Club entitling him to deductions for one-half of the rent payments via the S corporation pass-through rules.